MICHAEL JOSEPH O'CONNOR ET AL. *v.*
PLOTKINS, INC.

\* \* \*

PLOTKINS, INC. *v.* RIVIERA BEACH
VOLUNTEER FIRE COMPANY, INC.

[No. 914, September Term, 1975.]

*Decided July 26, 1976.*

The cause was argued before THOMPSON, POWERS and LOWE, JJ.

*John L. Moring, Jr.,* with whom were *Goff & Moring* on the brief, for appellants Michael Joseph O'Connor et al.

*Joseph G. Finnerty, Jr.,* with whom were *Edward S. Digges, Jr.* and *Garber A. Davidson, Jr.,* on the brief, for appellee Plotkins, Inc.

*Joseph G. Finnerty, Jr.,* with whom were *Edward S. Digges, Jr.* and *Garber A. Davidson, Jr.* on the brief, for appellant Plotkins, Inc.

*Louis G. Close, Jr.* for appellee Riviera Beach Volunteer Fire Company, Inc.

POWERS, J., delivered the opinion of the Court.

These appeals are from judgments entered in the Circuit Court for Howard County after a consolidated jury trial of three suits originally filed in the Circuit Court for Anne Arundel County. All of the claims arose from a tragic accident which happened on 9 April 1970 when a fire engine of the Riviera Beach Volunteer Fire Company, Inc., responding to an emergency call, overturned at the intersection of Fort Smallwood Road and Hog Neck Road in Anne Arundel County.

As a result of the accident Michael Joseph O'Connor, David R. McDevitt, and Joseph E. Sank were injured. John F. Balcer was killed.

O'Connor filed suit against Plotkins, Inc., which had installed new tires on the fire engine three days before the accident, and against Pierre Thibault, Ltd., the manufacturer of the fire engine. In another suit filed against the same defendants the estate and the surviving widow and children of John F. Balcer were plaintiffs, as also were Joseph E. Sank and his wife, and David R. McDevitt. A third suit against the same defendants[1] was filed by the Fire Company. In that case Plotkins, Inc. filed a counterclaim against the Fire Company for contribution or indemnity as to any damages for which Plotkins, Inc. may be found liable to the plaintiffs in the two other suits.

The three cases pending in the Circuit Court for Anne Arundel County were consolidated for trial, and later were removed to Howard County. At the trial in the Circuit Court for Howard County findings by the jury on issues submitted to it resulted in judgments in favor of Plotkins, Inc. on all of the plaintiffs' claims against it, and a judgment in favor of the Fire Company on the counterclaim of Plotkins, Inc.

After their motion for a new trial was heard and denied, and judgments entered, the individual plaintiffs appealed. They raise a single question. It is:

> "Did the trial court err in admitting into evidence over objection the entire report of the Defendant's expert which report contained facts, opinions and conclusions of others amounting to hearsay and from which [the expert] partially expressed opinions in open court?"

The evidence showed that the fire engine overturned while making a right turn at a right angle intersection of two roads. A fault or damage in the left rear wheel assembly was observed after the accident. All of the plaintiffs contended that the wheel was incorrectly assembled and replaced by the employee of Plotkins, Inc. when he installed the new

---

1. It appears that all plaintiffs obtained default judgments against Pierre Thibault, Ltd. Those judgments are not involved in this appeal.

tires three days before. Plotkins, Inc. contended that the overturn was caused by unrelated factors involved in the design, manufacture, and operation of the fire engine, and that the damage observed in the wheel assembly was not the cause, but the result, of the overturning of the fire engine.

Each side produced expert opinion evidence to support its contention. The witness called by Plotkins, Inc. was Mr. Bradford Schofield, manager of consulting services for Teledyne Materials Research, a consulting engineering firm. No question is involved in this appeal concerning his qualifications as an expert, nor the admissibility of any of his testimony. As the appellants put it in their brief:

> "We do not question on this Appeal Mr. Schofield's testimony as such, but that the testimony was followed into evidence by his report, which we submit was totally irrelevant to the case since Mr. Schofield had testified fully and therefore, that report was of no probative value and seriously prejudiced the Plaintiffs case from the standpoint that it was used to support Mr. Schofield's testimony and to impress the Jury with its size and thickness."

If the issue is as narrow as appellants state it, they are contending that what an expert witness may properly say orally before a jury, he may not say in writing. We shall consider that issue as stated.

In a discussion of what constitutes improper suggestion to a witness, either at a trial or in a deposition, the general statement is made in 3 Wigmore, Evidence § 787 (Chadbourn rev. 1970):

> "Since the witness' statement must correspond spontaneously to his actual recollection, it is plain that to permit him, as a practice, to *commit to writing beforehand* certain statements and then to read them or hand them in as his testimony would be to risk fabrication and coached testimony."

The author goes on to say, however:

> "But the foregoing principle should be left flexible, to fit the facts of testimonial psychology. Sometimes a prepared statement has advantages, without risk of fabrication. In many cases, especially where an *expert witness* upon a subject of scientific knowledge has made an investigation or analysis and is called to testify, it makes for his own lucidity and accuracy, and for better comprehension and valuation of his testimony, if he first reads his written report stating in precise terms his observations and inferences. This practice should be freely permitted."

Speaking of an expert's written report as affected by the rule against hearsay, and by the right to cross examination, the author says in 5 Wigmore, Evidence § 1385 a. (Chadbourn rev. 1974):

> "So long as the witness is at the trial subject to cross-examination, there can be no sound objection, on the present principle, to the form of delivering his testimony. In particular, he may *read a report prepared beforehand.* The report's statements themselves were indeed not subjected to cross-examination at the time of their composition; but they are *now* subject to it, and that is enough. The case is the same as though the witness should give an uninterrupted oral narrative for his direct examination, being afterwards subjected to cross-examination. Whether a witness delivers his direct testimony with or without interrogation by the party calling him, is merely a matter of the mode of narration (§787 *supra*) and does not affect the present principle."

In the trial of the present case the testimony of Mr. Schofield, after a recital of his professional qualifications, began with a reference to his report, previously identified as

Exhibit 25. The report had been in the hands of all parties for more than a year. Throughout his direct testimony, which covered more than 60 pages of the transcript, Mr. Schofield referred to his report and to many of the numerous exhibits attached to it. At the end of the direct examination, appellee offered the report in evidence. Over objection it was received. The objection was two-fold: first, that the witness had already testified to his opinions and there was no need for the report, and second, that the report contained opinions of others which were inadmissible.

If it would have been proper to read the entire report, there was no error in permitting testimony from it by the question and answer method, and then admitting the entire report in evidence. It was merely a matter of the mode of narration. To the extent that the report may have been cumulative, its admission was discretionary.

But appellants' argument is not confined to the precise distinction between "oral" and "written", for which they concededly find no authority, but is directed primarily to the inclusion in the report of information obtained by the expert from other sources.

To the extent that the report detailed and explained the use of information obtained by the expert from other sources, its admission was not only correct, but appellee was required to offer it to support the opinion given. The Court of Appeals said in *Casualty Insurance Co. v. Messenger*, 181 Md. 295, 29 A. 2d 653 (1943), at 298-99:

> "A witness is qualified to testify as an expert when he exhibits such a degree of knowledge as to make it appear that his opinion is of some value, whether such knowledge has been gained from observation or experience, standard books, maps of recognized authority, or any other reliable sources. The knowledge of an expert in any science or art would be extremely limited if it extended no further than inferences from happenings within his own experience. His testimony is admitted because it is based on his special knowledge derived not only

from his own experience, but also from the experiments and reasoning of others, communicated by personal association or through books or other sources."

In *State Roads Comm. of Md. v. Novosel*, 203 Md. 619, 102 A. 2d 563 (1954), the Court said, at 626-27:

"An expert may be one who is trained in assembling and evaluating information in allied fields in which he lacks the same first-hand knowledge that he possesses in his own specialty."

Indeed, not only may an expert be permitted, but may be required to demonstrate the basis for his opinion. In a tax assessment case, *Dickinson-Tidewater v. Supervisor*, 273 Md. 245, 329 A. 2d 18 (1974), the Court of Appeals said, at 253:

"Unquestionably, the facts upon which the opinion of an expert witness is predicated must be stated, *Fink v. Steele*, 166 Md. 354, 363, 171 A. 49 (1934); this is so because the opinion of an expert must rest upon facts legally sufficient to form a basis for his conclusion, *Stickell v. City of Baltimore*, 252 Md. 464, 474, 250 A. 2d 541 (1969). If the facts relied upon for the expert opinion are not revealed, it becomes impossible to ascertain whether the conclusion drawn from them possesses sufficient probative force; or is not mere conjecture or speculation, *State, Use of Stickley v. Critzer*, 230 Md. 286, 290, 186 A. 2d 586 (1962); *Fink v. Steele, supra.*"

See also *State, Use of Solomon v. Fishel*, 228 Md. 189, 179 A. 2d 349 (1962).

At the conclusion of a rather extensive review of cases involving expert opinion evidence we said, in *Madden v. Merc.-Safe Dep. & Tr. Co.*, 27 Md. App. 17, 339 A. 2d 340 (1975), at 44:

"Where an expert relies on reports of others, he

"must demonstrate to the court not only that the reports were made in a reliable manner, but that they are reliable sources of information for the purposes to which the expert puts them."

In the very recent case of *Noble v. Director*, 32 Md. App. 192, 359 A. 2d 253 (1976), we held that the trial court erred when it declined to admit in evidence or permit identification for the record of the raw factual data upon which a testifying psychologist expressed an opinion that the appellant was a defective delinquent.

Appellants cite and rely upon what the Court of Appeals said in *Consolidated Mechanical Contractors v. Ball*, 263 Md. 328, 283 A. 2d 154 (1971). In that case an employee of the State Division of Vocational Rehabilitation was permitted to give an opinion that an injured party was permanently and totally disabled from work. The witness was aided in reaching that conclusion by relying upon the opinions expressed in reports received from several medical specialists. Those reports were not in evidence. The Court said, at 335-36:

"It is generally true that the opinion of an expert may not be based in whole or in part on the opinions, inferences and conclusions of other witnesses, [citations omitted] nor on reports and examinations of others if they contain only opinions, inferences or conclusions. * * * Admittedly it is often hard to draw the line between fact and opinion. The usual objection seems to be based on the premise that hearsay will be the foundation of the opinion. While there is considerable authority to the contrary we think there is support for the view that such opinion evidence, in some circumstances, may be admissible, for instance where such reports are relied on by the expert in the practice of his profession."

Another case of interest is *Air Lift, Ltd. v. Board of*

*County Commissioners,* 262 Md. 368, 278 A. 2d 244 (1971), in which the Court of Appeals affirmed an order of the circuit court for Worcester County granting an injunction against conducting a rock festival or concert. The Court, in ruling upon the admissibility of certain evidence, said at 401:

> "The objection to the testimony of Sgt. Rappaport was based on the alleged hearsay nature of information received by him in his official capacity from other identified law enforcement officers in regard to rock festivals or concerts. This information, however, was obtained in the regular course of Sgt. Rappaport's official work. He testified that he prepared written reports for his office in the regular course of his duties based upon what he and his office considered to be reliable information from law enforcement officials who were mentioned in the official publication of Law Enforcement Intelligence Units used throughout the United States and by some law enforcement units in Canada. This official information, which is far from mere conjecture or guess, is part of the data on which Sgt. Rappaport, as an expert, reasonably based his opinion. The trustworthiness of the data would go to the weight of the expert testimony and does not, *per se,* make the expert testimony inadmissible."

We do not agree with appellants' characterization of the report as containing opinions and conclusions of others. Their argument specifies four sources they contend are objectionable. They are:

> a. Use of drawings and specifications for the fire apparatus, obtained from Pierre Thibault, Ltd., the manufacturer.
>
> b. Use of engineering drawings, brochures, and other descriptive literature made available by Dayton Steel Foundry, manufacturer of the wheels. This included information on standard practices in tire installation, and concurrence by Dayton's

engineers with the expert's analysis and interpretation of the reasons for variations in stud thread exposure.

c. Use of engineering drawings and descriptive literature for the tire rims obtained from Firestone Steel Products Company.

d. Use of results of research tests to determine coefficients of friction of the tires, obtained from Michelin Tire Company, manufacturer of the tires.

To the very limited extent that the expert's report referred to opinions or conclusions of others, they were at most confirmatory of the expert's own opinions. We hold that there was no error in the admission of the report in evidence.

It is unnecessary to consider the contention made by Plotkins, Inc. as appellee that the trial judge erred in denying its motions for directed verdicts.

The other appeal in the record before us was taken by Plotkins, Inc. from the judgment against it on its counterclaim against the Fire Company. As cross-appellant Plotkins, Inc. says here that if the judgments in its favor in the other cases are affirmed, the issue in this appeal would be moot. We agree, and having concluded to affirm the other judgments, we shall dismiss the appeal taken by Plotkins, Inc.

Riviera Beach Volunteer Fire Company responded to the appeal of Plotkins, Inc. with a motion to dismiss, in addition to argument on the merits. The motion points out that the appeal was filed more than 30 days after entry of the judgment appealed from, although within 30 days after entry of final judgments in the other cases, after the motion for new trial was denied. The Fire Company argues that the cases were separate, even though consolidated, and that Maryland Rule 605 a did not defer the time for appeal until all claims in the case had been adjudicated. It relies upon *Coppage v. Resolute Insurance Co.*, 264 Md. 261, 285 A. 2d 626 (1972). The relation of the consolidated cases here, sharing common questions of law and fact, was similar to

that involved in *Leach v. Citizens Bank of Md.*, 17 Md. App. 391, 302 A. 2d 634 (1973), and was not analogous to *Coppage*.

Plotkins, Inc.'s appeal will be dismissed, not because it was filed late, but because the issue is moot.

> *Judgments in favor of Plotkins, Inc. as a defendant in each case, affirmed.*
>
> *Appeal by Plotkins, Inc. from judgment against it on counterclaim, dismissed.*
>
> *Plotkins, Inc. to pay the cost of both briefs in cross appeal and one fourth of cost of the joint record extract.*
>
> *Appellants to pay all other costs.*