503 A.2d 239

John E. YAREMA, Jr., Sherrill Yarema and
Yarema's Lake, Inc.

v.

**EXXON CORPORATION.**

**No. 49, Sept. Term, 1985.**

Court of Appeals of Maryland.

Jan. 28, 1986.

Brian C. Parker (Gebhardt & Smith, on brief), Baltimore, for appellant.

Lewis A. Noonberg (John E. Griffith, Jr. and Piper & Marbury, Baltimore and Richard P. Delaney and Mark Howard, of Counsel, Houston Tex.), on brief, for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

ELDRIDGE, Judge.

The Court of Special Appeals dismissed the appeal in this case for want of appellate jurisdiction, holding that the order of appeal was premature. We then granted a petition for a writ of certiorari to review this jurisdictional issue, which involves the relation between Maryland Rule 2–503(a), concerning consolidation of separate actions and judgments in consolidated actions, and Maryland Rule 2–602, concerning judgments in actions involving multiple claims or multiple parties. The case also presents a second issue relating to appellate jurisdiction, involving the operation of Maryland Rule 2–535(a).

## I. *Proceedings In The Circuit Court*

This case began on October 9, 1981, when petitioners John E. Yarema, Jr., Sherrill Yarema and Yarema's Lake, Inc. ("the Yaremas"), along with four other parties, filed a declaration in the Circuit Court for Baltimore County against the respondent Exxon Corporation ("Exxon"), an Exxon dealer, and nine other defendants. The plaintiffs, relying on theories of strict liability, negligence, nuisance and trespass, sought damages for the alleged contamination

of their land and groundwater by the defendants. The action was denoted Case No. 108233 by the circuit court.

More than six months later, on April 27, 1982, S & S Land Company and S & S Development Company filed in the Circuit Court for Baltimore County a suit against Exxon and thirteen other defendants, which action was given Case No. 82–L–921. On July 30, 1982, Ascot Estates, Inc., and Alvin L. Blank filed in the same court Case No. 82–L–1717 against Exxon and fourteen other defendants. The declarations in both of these actions were similar to the declaration in the Yaremas' suit, seeking damages for the alleged contamination of land and groundwater, and relying on theories of strict liability, negligence, nuisance and trespass.

Thereafter the Gulf Oil Company, a defendant in all three cases, filed a motion to consolidate the actions on the ground that they involved common issues of law and fact. The plaintiffs in No. 108233, arguing that "[e]ach separate case involves a host of legal and factual issues which are not raised by the other cases" and that "the parties in each of the cases are in different phases of discovery and trial preparation," opposed the motion to consolidate. Other parties in the several cases also opposed consolidation. After a hearing, however, the circuit court on January 28, 1983, entered an order pursuant to former Rule 503 (now Rule 2–503(a)(1)) consolidating the three actions. The order recited that

"on the Motions for Consolidation filed; on the Motion made for consolidation in open court and to what extent not covered, the court on its own Motion consolidates all cases for the purpose of trial."

Several months later, on June 3, 1983, a fourth action (Case No. 83–L–1423) was filed in the Circuit Court for Baltimore County by Manor Associates against Exxon and fourteen other defendants, also seeking damages for the alleged contamination of land and groundwater and relying on essentially the same legal theories set forth in the

previously filed cases. The court granted Manor Associates' motion to consolidate Case No. 83–L–1423 with the other three cases.[1]

Subsequently, the circuit court entered orders in all four cases (1) that "all discovery which has previously been made in any of the ... cases shall apply and pertain to all of the aforesaid cases as if the discovery had been conducted in each case," (2) that all future discovery in any of the cases shall apply to all four of the cases, (3) that all parties in all of the cases "shall make full disclosure ... among themselves of the results of all tests of boring logs, soil tests, water elevations, water samples, tank tests, and chromatagrams ... taken at any time by or on behalf of any of the parties to these consolidated cases," and (4) that "each and every party in the ... cases is directed to disclose to every other party in the said cases ... the name(s) of any expert witness that is expected to testify at the trial of these cases." On the other hand, the Court maintained separate docket sheets and separate files for each of the cases.

A seven-week trial of the four consolidated cases began on October 3, 1983. At the end of the plaintiffs' case, the motion of one of the defendants for a directed verdict was granted. Also, both before and during the trial there were numerous settlement agreements among the parties, although no one of the consolidated cases was entirely disposed of by settlements. Nevertheless, ultimately all remaining defendants in all four cases, except Exxon and its dealer, apparently reached settlement agreements with all of the plaintiffs including the Yaremas. Additionally, in Case No. 108233, the plaintiffs other than the Yaremas settled with Exxon and its dealer.[2]

---

**1.** Neither the motion to consolidate nor the order consolidating No. 83–L–1423 with the earlier cases contained the language "for purposes of trial."

**2.** While the settlement agreements were all apparently entered into before and during the trial, several of the dismissals of claims by

Before the jurors began deliberating, the Court instructed them that "each case is to be considered separately and independently." On November 21, 1983, the jury returned a separate verdict in each of the four cases. In No. 108233, it awarded a verdict in favor of plaintiffs John E. Yarema, Jr., and Sherill Yarema against Exxon for $60,000.00 compensatory damages and $20,000.00 punitive damages, and in favor of the plaintiff Yarema's Lake Inc., against Exxon for $5,000.00 compensatory damages and $20,000.00 punitive damages. In response to issues submitted, the jury based its verdict against Exxon on negligence, nuisance and strict liability. The jury, however, found no basis for liability on the part of Exxon's dealer. In the other three cases, the jury rendered similar verdicts, awarding the plaintiffs various amounts of money damages against Exxon based on negligence, nuisance and strict liability, and exonerating Exxon's dealer. On the same day, all of the jury verdicts were entered on the dockets as judgments nisi.[3]

On November 23, 1983, in Case No. 108233, the Yaremas filed a motion for a new trial. Two days later Exxon filed a motion for judgment notwithstanding the verdict, new trial or remittitur, which was applicable to all four cases. A hearing on the motions was held on December 16, 1983, although the proceedings were not recorded. The docket entries in Case No. 108233 state that both the Yaremas' motion and Exxon's motion were denied on that date by the circuit judge. The docket entries go on to show as follows: "December 16, 1983. Judgment Absolute." Similar entries were made on the docket sheets in the other three cases.[4]

---

settling plaintiffs were not entered on the docket until after trial, with some in Case No. 108233 entered as late as December 30, 1983.

**3.** Judgments nisi were abolished by the revision of the Maryland Rules effective July 1, 1984.

**4.** Exxon in its brief (p. 4) states as follows:
"On December 16, 1983, Judge Sfekas heard arguments, without a court reporter present, on those motions. While the parties dispute what Judge Sfekas actually did or said at that hearing, it is clear

Next in Case No. 108233, counsel for Exxon submitted a proposed order, which the circuit court on January 13, 1984, signed and filed, reducing the amount of the awards in favor of the Yaremas and directing that judgment be entered for the reduced amounts. Each side approved the order as to form only. On the same day, judgment was entered on the docket in favor of the Yaremas for the reduced amounts.[5] Somewhat similar orders and judgments were signed and entered in Case No. 82–L–921 on December 29, 1983, in Case No. 82–L–1717 on January 5, 1984, and in Case No. 83–L–1423 on January 5, 1984, although the order and judgment in No. 83–L–1423 was for the same amounts as the jury's verdict.

---

that Judge Sfekas recognized that compensatory damage verdicts in favor of the Yaremas, Ascot Estates and S & S should be reduced by four-fifths and that he would sign orders to be prepared by the parties accomplishing that reduction. Judge Sfekas was not prepared to do so at the hearing because he did not want to do the arithmetic....

"Following the hearing, the parties circulated proposed orders reducing the jury's compensatory damage verdicts...."

5. The body of the January 13, 1984, order was as follows:
"ORDER:
"It is this 13th day of January, 1984, by the Circuit Court for Baltimore County, State of Maryland,
"ORDERED, that the jury's verdict as to compensatory damages in favor of John E. Yarema, Jr. and Sherrill Yarema, jointly, be and is hereby reduced by the sum of Forty Eight Thousand Dollars ($48,000), said sum representing four-fifths ($\frac{4}{5}$) of the total compensatory award, and it is further
"ORDERED, that the jury's verdict as to compensatory damages in favor of Yaremas' Lake, Inc. be and is hereby reduced by the sum of Four Thousand Dollars ($4,000), said sum representing four-fifths ($\frac{4}{5}$) of the total compensatory award, and it is further
"ORDERED, that judgment be entered in favor of John E. Yarema, Jr. and Sherrill Yarema, jointly, and against the Defendant Exxon Corporation, in the amount of Twelve Thousand Dollars ($12,000) compensatory damages and Twenty Thousand Dollars ($20,000) punitive damages, plus costs, and it is further
"ORDERED, that judgment be entered in favor of Yaremas' Lake, Inc. and against the Defendant, Exxon Corporation, in the amount of One Thousand Dollars ($1,000) compensatory damages and Twenty Thousand Dollars ($20,000) punitive damages plus costs."

Exxon filed separate orders of appeal in each case on January 24, 1984. Three days later, Exxon filed separate motions in each case to correct the docket entries of December 16, 1983, arguing that the docket entries were inconsistent with the circuit judge's actions at the December 16th hearing. Thereafter the plaintiffs in the four cases filed oppositions to the motions to correct the docket entries. They also filed motions to strike the orders of appeal on the ground that the orders were filed more than thirty days from the December 16th judgment. *See* Rules 1012 a and 1013.

A hearing on the motions to correct the docket entries and to strike the appeals was held on February 24, 1984. At the conclusion of the hearing the circuit judge issued an oral opinion, holding that at the prior hearing on December 16, 1983, he did deny the plaintiffs' motions for new trial and Exxon's motions, that he did believe that the entry of judgment absolute as of December 16th was appropriate, and that the December 16th docket entries were correct. The circuit judge further held that at the December 16th hearing, "subsequent to the denial of the motion[s] ... there was a discussion as to what the proportionate shares of each original defendant or of this defendant who was still in the case, Exxon, ... would be." The judge went on:

"It was clear to the Court on that day, and I so indicated, that the Court did not have the figures of the settlements made by other defendants and therefore, the Court was not in a position to indicate in precise dollars and cents what the proportionate share of Exxon's payment would be, and I suggested to you that I didn't want to do the arithmetic. That was my exact language. And that this was something that I would leave to counsel.

"It was not the Court's suggestion that orders be submitted. That was, in fact, volunteered by counsel, and I said fine because I felt and I thought it was very appropriate, that the dollars and cents figures be perpetuated, if you please, by way of an order so that there would be no future question after an appeal had been

taken or after a time period as to what exactly what the amount that had to be paid. And the Court indicated that that was appropriate and that I would be happy to sign such an order when it was submitted. But as far as the Court was concerned, the entry of the judgment absolute as of December 16 was an entirely appropriate entry. And the Court wondered whether Exxon had decided not to appeal when the time period went by and nothing more was heard. And I confess that the Court was surprised when the notice of appeal came to its attention."

The court then denied the motion to correct the docket entries and granted the motions to strike the appeals.

Later at the February 24th hearing, counsel for Exxon represented that there were several claims in some of the cases which had not been disposed of by orders or dismissals entered on the docket, and that "[w]e think there is a Rule 605 incomplete adjudication problem until that's done." Exxon's attorney submitted proposed orders regarding such claims. The attorneys for several of the plaintiffs opposed the suggestion, and the court declined to sign the orders.

On March 1, 1984, Exxon filed a single order of appeal, applicable to all four cases, from the orders denying the motion to correct the docket entries and striking Exxon's previously filed appeals. Because of the length of time required to prepare the trial transcript, the record was not filed in the Court of Special Appeals until December 7, 1984.

## II. *Appellate Proceedings*

The Yaremas filed a motion in the Court of Special Appeals to dismiss Exxon's appeal. Exxon then filed a motion in the appellate court "To Set Aside The Circuit Court's Order Of February 24, 1984 Or, In The Alternative, To Remand For Resolution Of Open Claims," and the Yaremas filed an opposition to that motion. Exxon's position was that the circuit court and the plaintiffs erroneously viewed the December 16, 1983, judgment as the final judgment in the cases, that no final judgments in the cases had been entered prior to the period from December 29, 1983,

through January 13, 1984, and that the times for appeal had not expired when the January 24, 1984, orders of appeal were filed. Exxon submitted that "its appeal is timely and the issues raised should be heard on the merits" by the Court of Special Appeals. Alternatively, Exxon argued that "if it [the appeal] is not [timely], it is not because it is late but rather because it is premature [under former Rule 605 a] ... because there was neither a complete adjudication of all of the claims nor a certification by the Circuit Court that there was no just reason for delaying the appeal." Exxon did not allege that there were any unadjudicated claims in Case No. 108233; instead it identified claims in the other cases as follows:

"The claims which were never adjudicated or dismissed at all were:

    a. The cross-claims of Summers Fuel, Inc. against Exxon Corporation and Abraham Goldberg, filed on July 13, 1983 in the *Manor* suit (Docket Entry 14, Case No. 83–L–1423);

    b. The third party claim of Exxon against Dorothy Tillman filed on September 21, 1982 in the *Ascot* suit (Docket Entry 13, Case No. 82–L–1717); and

    c. The third party claim of Exxon against Dorothy Tillman filed on June 23, 1983 in the *Manor* suit (Docket Entry 10, Case No. 83–L–1423)."

Exxon went on to suggest that three claims made by the plaintiffs S & S Land Company and S & S Development Company in Case No. 82–L–921 were "never addressed" by the circuit court. Exxon argued that the presence of unadjudicated claims in *some* of the consolidated cases deprived *all* of the consolidated cases of finality. The alternate relief sought by Exxon was a remand of all four cases to the circuit court for disposition of the unadjudicated claims and entry of final judgment.

The Yaremas' position in the Court of Special Appeals was the same as their position in the circuit court, namely that the final judgment was entered on December 16, 1983, and that the order of appeal filed on January 24, 1984, was

too late. With regard to Exxon's alternate argument, the Yaremas pointed out that "[n]one of the alleged open matters . . . pertain to the case filed by" the Yaremas (Case No. 108233) and that "[i]t is undisputed that all claims in that case have been resolved." The Yaremas argued "that when separate and distinct cases are consolidated for purposes of trial, the cases must be considered separately for purposes of appeal. *Coppage v. Resolute Insurance Company*, 264 Md. 261, 285 A.2d 626 (1972)."

Thereafter, the Court of Special Appeals dismissed all four appeals on its own motion, issuing the following order:

"Upon consideration of the Motion to Dismiss Appeal; Appellant's Motion to Set Aside the Circuit Court's Order of February 24, 1984, or In the Alternative, to Remand for Resolution of Open Claims; and the Memoranda in Support thereof and in opposition thereto; it is this 14th day of January, 1985, by the Court of Special Appeals,

"ORDERED that said Motions be, and they are hereby, denied.

"It appearing from the record in the above-captioned consolidated case that appeals were taken to this Court on January 24, 1984, from judgments entered on December 29, 1983, January 5, 1984, and January 13, 1984, by the Circuit Court for Baltimore County (Sfekas, J.) leaving several claims on which there has been no entry of judgment or dismissal (e.g., the cross-claim of Summers Fuel, Inc. against Exxon Corporation and Abraham Goldberg, and the third-party claims of Exxon Corporation against Dorothy Tillman); and it further appearing that the lower court made no express determination that there is no just reason for delay nor express direction for the entry of judgment, as required by Maryland Rule 2–602 (formerly Rule 605a); and it appearing, therefore, that there has been no entry of a final judgment from which an appeal to this Court would lie,

"It is, therefore, on the Court's motion.

"ORDERED that the captioned appeal be, and it is hereby, dismissed as not allowed by law."

The above-quoted order seems to reflect the alternate position urged by Exxon, *i.e.*, that when several cases are consolidated they should be treated as a single case for purposes of former Rule 605 a and present Rule 2–602, and that the pendency of unadjudicated claims in only some of the consolidated cases results in there being no final judgment in any of the consolidated cases absent a proper certification under Rule 2–602. Both sides have construed the order as embodying this alternate argument advanced in Exxon's motion, and the appellate court's reference to the same unadjudicated claims set forth in Exxon's motion tends to confirm such construction. Moreover, this position has previously been taken by the Court of Special Appeals.[6] Consequently, while the matter is not entirely clear, we shall assume for purposes of this opinion that the Court of Special Appeals' dismissal was based on the view that unadjudicated claims in Case Nos. 82–L–921, 82–L–1717 and 83–L–1423 prevented any "judgment" in Case No. 108233 from being final even though all claims in No. 108233 had been resolved.[7]

---

6. *O'Connor v. Plotkins, Inc.*, 32 Md.App. 329, 338–339, 362 A.2d 95 (1976); *Leach v. Citizens Bank of Md.*, 17 Md.App. 391, 394–399, 302 A.2d 634 (1973).

7. There are some factors which cast a degree of doubt as to whether the Court of Special Appeals based its dismissal upon Exxon's alternate position. The appellate court's order does not expressly adopt such position, and the reference to the same unadjudicated claims relied on by Exxon is by way of example. Also, the Court of Special Appeals denied Exxon's motion in its entirety. Furthermore, it is not clear to us from our examination of the docket entries in Case. No. 108233 that all claims in that case have been formally resolved. Therefore, the Court of Special Appeals' dismissal might have rested on its view that there were unadjudicated claims in all four cases.

As we shall remand this case to the Court of Special Appeals for further proceedings, that court will be able to determine whether or not all claims in Case No. 108233 have been adjudicated. Of course, if there are any unresolved claims in No. 108233, they will present a jurisdictional bar to considering the merits of whatever arguments may be advanced by Exxon concerning liability or damages.

■ This Court granted the Yaremas' petition for a writ of certiorari in Case No. 108233.[8] The petition presented a single question:

"When a trial court consolidates several separate and distinct cases 'for the purpose of trial' and at the conclusion of the trial a judgment absolute is entered in a particular case in which no open claims remain, is the judgment in that case unappealable until all open claims in all of the other cases have been fully resolved?"

While primarily dealing with the above-quoted issue in their briefs and oral arguments, both sides have also argued the question of whether or not the January 24, 1984, order of appeal in Case No. 108233 was untimely because of late filing. As this question directly relates to the presence or absence of appellate jurisdiction, we shall consider it in addition to the question presented in the certiorari petition.[9]

### III. *The Application of Rule 2–602 to this Consolidated Action*

Rule 2–503(a)(1) authorizes a circuit court, *inter alia*, to consolidate actions if they "involve a common question of law or fact or a common subject matter." [10] Former Rule

---

**8.** No petitions for writs of certiorari were filed on behalf of any of the plaintiffs in Case Nos. 82–L–921, 82–L–1717 and 83–L–1423, and Exxon filed no cross-petition for a writ of certiorari. Thus, Case No. 108233 is the only one of the consolidated cases now before us.

**9.** Rule 813a provides that in a case decided by an intermediate appellate court, "this Court will ordinarily consider only the issues which have been raised in the petition and any cross petition for certiorari. . . ." As the rule uses the word "ordinarily," it does permit exceptions. Jurisdictional issues are exceptions to Rule 813 a. *See, e.g., Biro v. Schombert,* 285 Md. 290, 293, 402 A.2d 71 (1979); *Eastgate Associates v. Apper,* 276 Md. 698, 700–701, 350 A.2d 661 (1976).

**10.** Rule 2–503(a)(1) provides as follows:
"(a) Consolidation.—
(1) *When Permitted.*—When actions involve a common question of law or fact or a common subject matter, the court, on motion or on its own initiative, may order a joint hearing or trial or consolidation of any or all of the claims, issues, or actions. An action instituted in the District Court may be consolidated with an action pending in a circuit court under the circumstances described in

503, which was in effect when Case No. 108233 was consolidated with the three other cases, contained a similar authorization.[11]

Rule 2–503(a)(2), specifically dealing with judgments in consolidated actions, states:

"(2) *Verdict or Judgment.*—In the trial of a consolidated action, the court may direct that joint or separate verdicts or judgments be entered."

Former Rule 606, in effect prior to July 1, 1984, contained the same provision. Under Rule 2–503(a)(2) and former Rule 606, the trial judge is given an option in consolidated actions to direct the entry of joint or separate judgments. In the cases here, regardless of which orders are deemed to be the final judgments, it is clear that the trial judge directed the entry of separate judgments and that separate judgments were in fact entered.

Judgments in an action involving multiple claims or multiple parties are governed by Rule 2–602, which was formerly Rule 605 a. Present Rule 2–602 provides as follows:

"Rule 2–602. JUDGMENTS NOT DISPOSING OF ENTIRE ACTION

(a) Generally.—Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:

(1) is not a final judgment;

---

Code, Courts Article, § 6–104(b). The court may enter any order regulating the proceeding, including the filing and serving of papers, that will tend to avoid unnecessary costs or delay."

**11.** Rule 2–503(a)(1) replaced Rule 503 as part of the comprehensive revision of the Maryland Rules effective July 1, 1984. The only differences between new Rule 2–503(a)(1) and old Rule 503 related to the consolidation or joint trial of law actions with equity actions and to the consolidation of District Court actions with circuit court actions.

(2) does not terminate the action as to any of the claims or any of the parties; and

(3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.

(b) When Allowed.—If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:

(1) as to one or more but fewer than all of the claims or parties; or

(2) pursuant to Rule 2–501(e)(3), for some but less than all of the amount requested in a claim seeking money relief only." [12]

---

**12.** The present version of Rule 2–602 was adopted by this Court on April 8, 1985. The order adopting the rule provided that it should "apply to all actions commenced on or after April 8, 1985 and insofar as practicable to all actions then pending."

Former Rule 605 a, in effect prior to July 1, 1984, stated as follows: "Rule 605. Multiple Claims—Judgments Upon
   a. *When Entered—As to Part or All.*

Where more than one claim for relief is presented in an action, whether as an original claim, counterclaim, cross-claim, or third-party claim, the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims."

Rule 605a was replaced by a prior version of Rule 2–602 effective July 1, 1984. This prior version of Rule 2–602 was structured the same as Rule 605 a and contained only minor wording changes. Interestingly, one of the wording changes was that in prior Rule 2–602, after the word "action" in the first clause, the phrase "including a consolidated action" was inserted. In *Snowden v. Baltimore Gas & Electric,* 300 Md. 555, 559 n. 1, 479 A.2d 1329 (1984), we stated: "The minor changes in wording [between the version of Rule 2–602 then in effect and Rule 605a] were not intended to effect any change in substance."

The current version of Rule 2–602, adopted April 8, 1985, did represent a restructuring and rewording of the rule. Nevertheless, the only intended change in substance related to the trial court's express determination of no just reason for delay and direction to enter final judgment with respect to a portion of the amount of money damages

The application of former Rules 605a and 606 (now Rules 2–602 and 2–503(a)(2)) to a judgment disposing of one entire case, when there remained unresolved claims in another case consolidated with it, was addressed by this Court in *Coppage v. Resolute Insur. Co.*, 264 Md. 261, 285 A.2d 626 (1972). In that case the receiver of an insolvent business brought an action against an insurer to have a contract between the insolvent and the insurer declared void and to recover a sum of money from the insurer. A "companion case" involved the same insurer's monetary claim filed in the receivership. The trial court consolidated both cases pursuant to Rule 503. Thereafter, an order was entered dismissing the receiver's action, but no order was entered disposing of the insurer's action. The receiver took an appeal, and the insurer moved to dismiss the appeal under Rule 605 a. In denying the motion to dismiss, this Court rejected the same position advocated by Exxon in the present case. The Court stated in *Coppage*, 264 Md. at 263–264, 285 A.2d 626:

> "We regard this reliance [upon Rule 605 a] as misplaced. Here, two entirely separate and distinct cases were consolidated for purposes of trial as a matter of convenience as permitted by Rule 503. The rule applicable to such consolidated actions is Rule 606 ... which contemplates the rendition of separate judgments, without a limitation of the sort imposed by Rule 605 a., which is applicable in instances where final judgments are entered on less than all the claims in a single action. As a consequence, we shall deny the motion to dismiss and proceed to a consideration of the merits of the appeal."

Recently, in a case governed by the present rules, we reaffirmed the viability of the *Coppage* holding. *Unnamed Atty. v. Attorney Griev. Comm'n*, 303 Md. 473, 494 A.2d

---

requested in a claim for money only. It is also interesting, however, that the phrase "including a consolidated action," which was inserted on July 1, 1984, was deleted from the present version of the rule adopted in April 1985.

940 (1985), involved an action to quash an administrative subpoena and a contempt action, which were treated as a single consolidated action in the trial court. A suggestion was made that the order disposing of the administrative subpoena action was not final and appealable under Rule 2–602 because it failed to resolve the contempt action. The suggestion was first rejected by the Court on the ground that the order disposed of both actions. 303 Md. at 483, 494 A.2d 940. As an alternate ground, however, the Court held that even if the order had failed to resolve the contempt matter, the order would nevertheless be appealable because the contempt matter was a separate action. *Id.* at 483–484, 494 A.2d 940. We stated (*id.* at 484, 494 A.2d 940):

> "Maryland Rule 2–602 provides, *inter alia,* that '[w]hen more than one claim for relief is presented in *an action:* ' an order 'that adjudicates fewer than all the claims ... shall not terminate the action as to any of the claims....' (Emphasis added.) By its very terms, Rule 2–602 is inapplicable to separate actions even though they are tried together. *See Coppage v. Resolute Insur. Co.,* 264 Md. 261, 285 A.2d 626 (1972)." [13]

In arguing that the *Coppage* holding should not control here, Exxon asserts that the four cases below were "not merely consolidated 'for purposes of trial.' " (Respondent's brief, p. 10). Exxon goes on to emphasize the extensive nature of the consolidation, referring to the orders relating to discovery, disclosure of data, expert witnesses, etc. Exxon's view is that whether or not the consolidated actions should be treated as one for purposes of Rule 2–602 depends upon the extent to which the cases were consolidated for various purposes in the trial court.

Nothing in the *Coppage* case, however, suggests that the extent of the consolidation in the trial court determines whether the consolidated actions should be treated as a

---

**13.** *See also* P. Niemeyer and L. Richards, *Maryland Rules Commentary* 259 (1984), taking the position that the *Coppage* holding is applicable under the new rules adopted July 1, 1984.

single action within the meaning of former Rule 605 a. The reference in *Coppage* to the cases being "consolidated for purposes of trial" does not necessarily imply the type of approach argued for by Exxon. Consolidated pre-trial discovery and disclosure certainly can be viewed as being "for purposes of trial."

■ The *Coppage* holding was based upon the language of former Rule 606, which authorizes the entry of separate judgments in consolidated actions, and the language of former Rule 605 a, which applies only to multiple claims in a single action. The Court flatly held that when the circuit court enters a judgment disposing of one case, that judgment is appealable despite the pendency of unresolved claims in another case consolidated with it. Under *Coppage* and present Rule 2–503(a)(2), unless the trial court clearly intends that a joint judgment be entered disposing of all cases simultaneously, consolidated cases are not to be treated as a single action for purposes of Rule 2–602; instead, each one of the cases is to be treated as a separate action.

Exxon also relies on two Court of Special Appeals opinions rendered subsequent to this Court's decision in *Coppage*. They are *O'Connor v. Plotkins, Inc.*, 32 Md.App. 329, 338–339, 362 A.2d 95 (1976), and *Leach v. Citizens Bank of Md.*, 17 Md.App. 391, 302 A.2d 634 (1973). While those opinions do support Exxon's position, we disapprove of their holdings on the issue now before us.

The *O'Connor* case involved three actions which were consolidated under former Rule 503, but in which separate judgments were entered at different times. The issue and the Court of Special Appeals' holding was set forth in its opinion as follows (32 Md.App. at 338–339, 362 A.2d 95):

"Riviera Beach Volunteer Fire Company responded to the appeal of Plotkins, Inc. with a motion to dismiss, in addition to argument on the merits. The motion points out that the appeal was filed more than 30 days after entry of the judgment appealed from, although within 30 days after entry of final judgments in the other cases,

after the motion for new trial was denied. The Fire Company argues that the cases were separate, even though consolidated, and that Maryland Rule 605a did not defer the time for appeal until all claims in the case had been adjudicated. It relies upon *Coppage v. Resolute Insurance Co.*, 264 Md. 261, 285 A.2d 626 (1972). The relation of the consolidated cases here, sharing common questions of law and fact, was similar to that involved in *Leach v. Citizens Bank of Md.*, 17 Md.App. 391, 302 A.2d 634 (1973), and was not analogous to *Coppage.*

"Plotkins, Inc.'s appeal will be dismissed, not because it was filed late, but because the issue is moot."

The Court of Special Appeals seemed to distinguish the *O'Connor* situation from *Coppage* on the ground that the consolidated cases in *O'Connor* shared "common questions of law and fact." This is not a valid distinction, as neither the cases involved in *Coppage* nor any other cases could have been consolidated under former Rule 503, and cannot be consolidated under present Rule 2–503(a)(1), unless they involve "a common question of law or fact or a common subject matter."

*Leach v. Citizens Bank of Md., supra,* involved two separate tort actions which were consolidated under former Rule 503. The situation in *Leach* was the converse of that in the instant consolidated cases, as in *Leach* the plaintiff was the same but each case had a separate and distinct group of defendants. In one of the cases, before trial, summary judgment was entered in favor of the defendants. The other case in *Leach* then went to trial before a jury, resulting in verdicts in favor of the plaintiff and against two of the defendants, with final judgments being thereafter entered. In holding that the cases should be treated as one for purposes of Rule 605 a, and that the separate judgment disposing of one case was not final and appealable until the judgment upon the jury verdicts in the other case, the Court of Special Appeals quoted from *Coppage,* including this Court's recitation in *Coppage* that the trial court had consolidated the cases "as a matter of conve-

nience as permitted by Rule 503." 17 Md.App. at 396, 302 A.2d 634, quoting 264 Md. at 263, 285 A.2d 626. The Court of Special Appeals then stated in *Leach* (17 Md.App. at 396, 302 A.2d 634):

> "The consolidation of the two [cases here] was in no way 'a matter of convenience'—it was intended to prevent two trials at *nisi prius* that involved the claim of a single plaintiff against multiple defendants, resulting from a single wrong and involving a common issue of fact and law."

This Court's reference to the "convenience" of consolidation in *Coppage,* however, was clearly not set forth as a standard for determining whether two consolidated actions should be treated as a single action for the purpose of former Rule 605 a. And, as previously pointed out, the involvement of a common issue of fact or law obviously cannot be the decisive factor.

Moreover, in its *O'Connor* and *Leach* opinions, the Court of Special Appeals did not discuss former Rule 606. Nevertheless Rule 606, authorizing separate judgments in consolidated actions, was the principal basis for the *Coppage* holding. The *O'Connor* and *Leach* cases, therefore, cannot be reconciled with this Court's decisions; insofar as those Court of Special Appeals' opinions relate to the issue here, they are overruled.

Finally, Exxon relies upon several decisions by the United States Courts of Appeal and a decision by the Supreme Court of Wyoming, *State v. District Court of Second Judicial Dist.,* 387 P.2d 550 (Wyo.1963).[14] As reviewed in a recent opinion by the United States Court of Appeals for the Ninth Circuit, *Huene v. United States,* 743 F.2d 703, 704–705 (9th Cir.1984), there is a three-way split among the federal circuits on this issue. That opinion points out that the First and Sixth Circuits consider "each of the consolidated cases to be a separate action and thus a judgment

---

**14.** The Wyoming case was also relied on by the Court of Special Appeals in its *Leach* opinion.

disposing of all claims in one of the consolidated actions to be a final judgment, appealable without a Rule 54(b) certification." [15] The Seventh, Fifth and Third Circuits "have applied a more flexible test under which the appellate court considers the extent and purpose of the consolidation and the relationship of the consolidated actions." [16] The Ninth Circuit, however, rejected both of these positions, holding that, with regard to all consolidations, there may be an "appeal only when there is a final judgment that resolves all of the consolidated actions unless a 54(b) certification is entered by the district court." [17] The Wyoming Supreme Court, dealing solely with Rule 54(b) of the Wyoming Rules of Civil Procedure (which is the same as Rule 54(b) of the Federal Rules of Civil Procedure), appears to have adopted the same approach as the Ninth Circuit. *See State v. District Court of Second Judicial Dist., supra.*

The only procedural rule which the above-discussed cases focused upon was Rule 54(b) of the Federal Rules of Civil Procedure or its equivalent. Rule 54(b) is essentially the same as former Maryland Rule 605 a and present Maryland Rule 2–602. In fact, former Maryland Rule 605 a was based on Rule 54(b), and we have generally viewed federal decisions under Rule 54(b) to be "especially persuasive" as to the meaning and application of former Rule 605 a. *East v. Gilchrist,* 293 Md. 453, 459, 445 A.2d 343 (1982), and cases there cited. The Federal Rules of Civil Procedure, however, contain no provision similar to former Maryland Rule 606 and present Rule 2–503(a)(2). But, as previously discussed, former Rule 606 was the principal basis for the

---

**15.** 743 F.2d at 704. *See In re Massachusetts Helicopter Airlines, Inc.,* 469 F.2d 439 (1st Cir.1972); *Kraft, Inc. v. Local Union 327, Teamsters, Etc.,* 683 F.2d 131 (6th Cir.1982).

**16.** 743 F.2d at 704. *See Ivanov-McPhee v. Washington Nat. Ins. Co.,* 719 F.2d 927 (7th Cir.1983); *Ringwald v. Harris,* 675 F.2d 768 (5th Cir.1982); *Jones v. Den Norske Amerikalinje A/S,* 451 F.2d 985, 986–987 (3rd Cir.1971).

**17.** 743 F.2d at 705.

holding in *Coppage v. Resolute Insur. Co., supra.* For this reason, Exxon's reliance on some of the federal decisions and the Wyoming decision is misplaced.

■ As the circuit court in the instant consolidated cases directed the entry of separate judgments in each case pursuant to former Rule 606, each one of the consolidated cases is to be treated as an entirely separate action for purposes of Rule 2–602.

### IV. *Whether Exxon's Order of Appeal Was Late*

Rule 1012(a) requires that an order of appeal be filed within thirty days of the judgment. As earlier discussed, the Yaremas have consistently argued that the final judgment in Case No. 108233 was entered on December 16, 1983, that the thirty-day appeal time began running on that date, and that the order of appeal filed on January 24, 1984, was too late. Exxon, on the other hand, has argued that the final judgment terminating Case No. 108233 was entered on January 13, 1984, with the time for appeal not starting to run until that date. Assuming that all claims in Case No. 108233 were resolved as of January 13, 1984, Exxon's position on this issue is clearly correct. Even if the December 16, 1983, "judgment" were final and appealable when entered, the revision of such judgment on January 13, 1984, deprived the earlier action of its finality.

■ Rule 2–535(a), formerly numbered Rule 625 a, authorizes the circuit court to exercise revisory power over a judgment on a motion filed within thirty days from the judgment.[18] Nevertheless, it is settled that neither the timely filing of a motion to revise a final judgment nor the

---

18. Rule 2–535(a) states as follows:
   "Rule 2–535. REVISORY POWER
   (a) Generally.—On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment and, if the action was tried before the court, may take any action that it could have taken under Rule 2–534."

court's denial of such motion, absent an order staying the operation of the judgment, affects the finality of the judgment or the running of the time for appeal. *Unnamed Atty. v. Attorney Griev. Comm'n*, 303 Md. 473, 484, 494 A.2d 940 (1985); *Hardy v. Metts*, 282 Md. 1, 5, 381 A.2d 683 (1978); *Hanley v. Stulman*, 216 Md. 461, 467, 141 A.2d 167 (1958).[19] But when a motion under Rule 2–535(a) to revise a final judgment is filed within thirty days and the circuit court in fact revises the judgment, and there has been no intervening order of appeal, the prior judgment loses its finality and the revised judgment becomes the effective final judgment in the case. *Unnamed Atty. v. Attorney Griev. Comm'n, supra*, 303 Md. at 484, 494 A.2d 940; *Brown v. Baer*, 291 Md. 377, 387, 435 A.2d 96 (1981). Furthermore, as the court's power to revise a judgment within the time prescribed by the rules is "inherent," [20] the same result obtains if the circuit court sua sponte revises the judgment within thirty days.[21]

Consequently, the time for appeal in Case No. 108233 began to run no earlier than January 13, 1984.[22]

---

**19.** Of course, under new Rules 2–532, 2–533, 2–534, and amended Rule 1012(d), all effective July 1, 1984, if a motion to revise a final judgment is filed within ten days of the judgment, it does deprive the judgment of its finality for purposes of appeal. Consequently Rule 2–535(a) and the above-cited cases are applicable only to a motion filed more than ten days after the judgment but within thirty days. *Unnamed Atty. v. Attorney Griev. Comm'n*, 303 Md. 473, 486, 494 A.2d 940 (1985).

**20.** *See Ayre v. State*, 291 Md. 155, 160, 433 A.2d 1150 (1981); *Owen v. Freeman*, 279 Md. 241, 245–246, 367 A.2d 1245 (1977), and cases there cited.

**21.** As to the court's authority to revise the judgment sua sponte, *see Scott v. State*, 223 Md. 376, 381, 164 A.2d 716 (1960). *Cf., Goins v. State*, 293 Md. 97, 111, 442 A.2d 550 (1982).

**22.** There is an alternate ground for rejection of the Yaremas' argument concerning the timeliness of Exxon's appeal. Under Rule 2–602, the December 16, 1983, "judgment" could not have been the final judgment in Case No. 108233 starting the running of the time for appeal. As previously noted, n. 2 *supra*, the dismissals of claims by

JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED, AND CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED EQUALLY BETWEEN EACH SIDE.

---

some of the settling plaintiffs in No. 108233 were not entered on the docket until December 30, 1983. The fact that these plaintiffs had entered settlement agreements previously did not dispose of their claims for purposes of Rule 2–602. Instead, there must be a dismissal, order of satisfaction or other order entered on the docket disposing of the claims. *Frericks v. Baines,* 16 Md.App. 343, 345–346, 296 A.2d 706 (1972). Therefore, even if there had been no revised judgment on January 13, 1984, and assuming that all claims in No. 108233 were disposed of by December 30, 1983, the final judgment in the case was on December 30th and not December 16th. *See Hardy v. Metts,* 282 Md. 1, 4–5, 381 A.2d 683 (1978).