148 N.W.2d 183 (1967)
John NICHOLAS, Plaintiff and Respondent,
v.
TRI-STATE FAIR & SALES ASSOCIATION and Black Hills Round-Up, Defendants and Appellants.
No. 10308.
Supreme Court of South Dakota.
January 31, 1967.
*184 Smiley & Anderson, Belle Fourche, for defendants and appellants.
Stephens & Brandenburg, Belle Fourche, for plaintiff and respondent.
HOMEYER, Presiding Judge.
Plaintiff brought this suit to recover for personal injuries sustained when he was struck and knocked down by a horse while attending the Black Hills Roundup at Belle Fourche, South Dakota, on July 4, 1963. A jury rendered its verdict in his favor and the defendant appeals from the judgment entered thereon.
Defendant's principal contention is that the evidence is insufficient to sustain the judgment. Specifically, it maintains there is no substantial credible evidence to establish that defendant was negligent. Precedents need not be cited for the familiar rule that it is our duty to view the evidence in a light most favorable to the prevailing party and the elementary premise that all conflicts in the testimony are deemed to have been resolved in his favor.
Defendant is a corporation which each year conducts the rodeo at Belle Fourche. The rodeo grounds are located on the outskirts of the city and a general description is necessary to fix the setting and circumstances surrounding the accident.
The show is staged in an arena which is part of the inner area of a circular race track which is also used in the rodeo. The arena is oblong shaped and was estimated at its widest points to measure about 500 feet from east to west and 300 feet from north to south. South of the arena is a large grandstand with bleachers on each side. This seating area is screened from the race track by heavy meshed wire. A board fence from six to seven feet high surrounds the arena except for the part in front of the grandstand and bleachers and for a segment to the north. In such segment opposite the grandstand is another set of small bleachers, a band shell, two gates, eight bucking chutes from which animals and their riders are released into the arena, a radio booth, and some roping chutes. A "crow's nest" for the rodeo announcer and other officials is centered above the bucking chutes. North of the arena, but still within the inner circle of the race track, is a sector used for feeding livestock employed in the rodeo; for exercising and practicing by contestants; for parking vehicles of participants; and corrals and chutes for livestock. These corrals and chutes extend northward from the bucking chutes to the inside perimeter of the race track. Swinging gates are a part of the construction of the corrals and chutes and when opened form a passageway from the west part of the area north of the arena to the east part thereof. When closed free access from one part to the other is prevented. Parking space for cars of spectators is provided on the rodeo grounds.
Plaintiff, then 26 years old, had never attended a rodeo before. He and his two companions, Ray Winter and Richard Dawe, parked their automobile in a parking area on the west side of the rodeo grounds, paid an admission fee at a temporary ticket booth on the west side, crossed the race track and entered the area north of the arena. Other spectators were doing the same thing and the show had just begun. A *185 large crowd was in attendance and the grandstand and bleachers on the south side appeared to be filled.
Dawe and plaintiff attempted to find seats in the bleachers on the north side, but this was filled as well as the arena fence in that area. People were watching the show by sitting on the fence and also by standing on the ground looking through openings in the fence. The three young men then went through an alley formed by the opened corral gates and found seats on top of the arena fence east of the bucking chutes. Other spectators were similarly perched in the same area. Plaintiff and Dawe watched virtually the entire performance while seated on such fence. Winter spent most of his time in the arena taking pictures.
The final event on the program was a wild horse race. It appears that one of the horses which was to be used in the race broke away as it was being moved through the arena to the track in front of the grandstand where it was to be saddled and mounted and ran to the west side of the arena. It was replaced by another horse for the race.
The wild horse race had been completed and the rodeo announcer had said that this concluded the show. Plaintiff had remained seated on the arena fence during the race, but his two companions and many others had descended into the arena to watch the race. After the race and the announcement of the completion of the show plaintiff left his seat on the fence and joined his companions and the three of them started across the arena in a west to northwesterly direction towards where their car was parked. There was evidence that the corral alley in the area north of the arena was closed.
Plaintiff testified that he was walking in the middle of the threesome; that no one was directing them or attempting to control their path of exit; that he saw no horse or other livestock in the arena at the time; that just before he was knocked down he saw one of his companions wave a hat.
Winter and Dawe in essence corroborated plaintiff, except they said they saw the horse running towards them coming from the west; that they waved their hats and yelled; that the horse narrowly missed Dawe and struck and knocked down plaintiff as it passed.
The evidence establishes that plaintiff was an invitee upon the premises of the defendant and it thus became defendant's duty to maintain the property in a reasonably safe condition and to exercise reasonable care to protect him from injury, Bergstresser v. Minnesota Amusement Co., 68 S.D. 579, 5 N.W.2d 49, 143 A.L.R. 53, but the defendant did not become an insurer of his safety. Clark v. Monroe County Fair Ass'n, 203 Iowa 1107, 212 N.W. 163.
In the Restatement of the Law of Torts, 2d Edition, Section 344, the general rule is stated:
"A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
(a) discover that such acts are being done or are likely to be done, or
(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."
Under Comment (a) it is said the rule is applicable "to theatres, restaurants, shops, stores, business offices, and any other premises held open to the public for admission for the business purposes of the possessor."
"The obligation of those who collect numbers of people in one place, for gain and profit, to be vigilant in their efforts to protect such people has long been recognized." Platt v. Erie County Agricultural Society, 164 App.Div. 99, 149 N.Y.S. *186 520, 523; Tantillo v. Goldstein Brothers Amusement Co., 248 N.Y. 286, 290, 162 N.E. 82. The obligation includes the duty to provide safe arrangements for the entrance and departure of people. Camp v. Wood, 76 N.Y. 92, 32 Am.Rep. 282; Gray v. First National Bank of Crosby, 250 Minn. 539, 85 N.W.2d 668.
In Schubart v. Hotel Astor, Inc., 168 Misc. 431, 5 N.Y.S.2d 203, affirmed in 281 N.Y. 597, 22 N.E.2d 167, the court stated the often quoted applicable rule:
"When one assembles a crowd or a large number of people upon his property for purposes of financial gain to himself he assumes the responsibility of `using all reasonable care to protect the individuals from injury from causes reasonably to be anticipated.' In the exercise of this duty it is incumbent upon him to furnish a sufficient number of guards or attendants and to take other necessary precautions to control the actions of the crowd; and whether the guards furnished or the precautions taken are sufficient is ordinarily a question for the jury to determine under all the circumstances."
See also Tomlin v. Miller, 335 Ill.App. 267, 81 N.E.2d 760; Redmond v. National Horse Show Ass'n of America, 78 Misc. 383, 138 N.Y.S. 364; Haberlin v. Peninsula Celebration Association, 156 Cal.App.2d 404, 319 P.2d 418.
The evidence was sharply conflicting as to the precautions which defendant took to protect the patrons of the rodeo, the warnings given, the number of policemen, guards, and attendants employed and where they were stationed and how they were used. Clearly the evidence was sufficient to sustain a finding that defendant failed in its duty to provide a reasonably safe place for the plaintiff and other spectators when it permitted him to depart the rodeo grounds by crossing the arena while a wild horse was loose therein and failed in its duty to protect him against harm from such horse. That plaintiff and other spectators who were permitted to sit on the arena fence, or to watch the wild horse race from inside the arena, would seek exit by crossing into the arena where a dangerous animal was loose and might be injured by such animal was reasonably foreseeable and could have been anticipated.
Foreseeability is a determinant of the duty element in the law of negligence. Rikansrud v. City of Canton, 79 S.D. 592, 116 N.W.2d 234. Chief Judge Cardozo expressed it in these words "The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or others within the range of apprehension." Palsgraf v. Long Island R. Co., 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253. It was within the range of defendant's apprehension that a risk of injury to plaintiff existed and could have been avoided by the exercise of reasonable care. At least a jury would be warranted to so find.
In his motion for directed verdict defendant did not urge that plaintiff assumed the risk of his injury or was contributorily negligent as a matter of law. Under the evidence these defenses were properly submitted to the jury and were determined adversely to defendant.
We find no error in the instructions given or in the refusal of any instructions proposed by the defendant. The instructions must be considered as a whole and when so considered we are of the opinion that they gave a full and correct statement of the applicable law. Jorgenson v. Dronebarger, S.D., 143 N.W.2d 869.
Affirmed.
ROBERTS, HANSON and BIEGELMEIER, JJ., concur.
RENTTO, J., not participating.