COMMERCIAL CREDIT EQUIPMENT CORP., Respondent

v.

JOHNSON, Appellant

(209 N.W.2d 548)

(File No. 11114. Opinion filed July 27, 1973)

Petition for rehearing denied September 6, 1973

Timothy J. Nimick, of Woods, Fuller, Shultz & Smith, Sioux Falls, for plaintiff and respondent.

Gale E. Fisher, of May, Johnson & Burke, Sioux Falls, for defendant and appellant.

BIEGELMEIER, Chief Justice.

Plaintiff, Commercial Credit Equipment Corporation (hereafter referred to as CCEC), brought this action for claim and delivery of a Case tractor against defendant Johnson who, in December 1968, was the owner of a Model 1031 Case tractor (No. 1), which he purchased from a dealer in 1966. For

convenience it is referred to by the first two digits of its serial number, "82". Johnson financed part of the purchase price which was paid up in early 1967.

The dealer phoned Johnson in the latter part of 1968 and told him he had a good prospect for the 1966 tractor and that if he was interested in trading it in on a new tractor he should bring in his 1966 tractor; Johnson did so on December 2, 1968. The dealer did not have a 1968 tractor on hand at that time so he told Johnson to sign a Purchase Agreement in blank and when a new tractor was received the dealer would fill in the model number, serial number, etc. and deliver it to the Johnson farm. As Johnson was leaving on an extended buying trip and vacation, he signed the agreement in blank.

The dealer filled in the Purchase Agreement describing the 1966 Model 1031 Case tractor, serial number "82", which was the identical tractor Johnson owned and had delivered to the dealer in exchange for a 1968 tractor he had ordered. The dealer then sold and assigned the agreement to CCEC for $10,000.

In March 1969, the dealer notified Johnson his new tractor (No. 2) was in stock and to pick it up. It soon developed mechanical trouble and Johnson returned it and demanded a new one. Until such time as the replacement was available the dealer let him use a demonstrator (No. 3) until July 1969. On August 30th the dealer made delivery of the Model 1031 replacement tractor (No. 4) and was paid $1,200 by Johnson; this payment together with the 1966 tractor (No. 1) he had traded in was payment in full for the 1968 (No. 4) tractor.

On September 10, 1969, a fieldman of CCEC checked this tractor. Johnson checked the serial number and found it was not an "82" series but an "83" series. The fieldman noted this in his call book. After Johnson signed the Call Report the fieldman added the reason for the mixup in the serial numbers as being the exchange of tractors by the dealer.

That same month the dealer called Johnson to tell him of the arrival of a new Model 1071 tractor, and said he wanted Johnson to try it. The tractor (No. 5) was delivered for his use "on

approval". After using it through the fall of 1969 Johnson decided to trade his Model 1031 tractor (No. 4) in on the Model 1071 tractor (No. 5); however, no formal agreement or Purchase Agreement was signed for this or any tractor except the one signed in blank in which the 1966 Model 1031 (No. 1) tractor (Owned by Johnson) was described. The Model 1071 tractor (No. 5) was returned to the dealer in February 1970.

Prior to that time a field agent of CCEC visited Johnson and saw he had the Model 1071 tractor (No. 5) which he had been using. Johnson testified he owed money on the Model 1071 tractor, and when the agent was talking about a contract Johnson assumed he was talking about payments on the Model 1071.

On November 4, 1969, CCEC received a payment of $3,335.63 from the dealer. As this was a very unusual procedure the ledger card was marked with a red letter "D" to represent dealer payment. Again a CCEC agent called on Johnson on December 30, 1969. The agent testified Johnson told him the reason he had made the $3,335.63 payment to the dealer was to take care of the installment payment plus an open account balance. Johnson denied making any such payment.

Johnson testified that during the latter part of February 1970, the dealer stopped at his farm where he was recuperating from a serious illness and took back the Model 1071 tractor (No. 5) on which he had paid $3,101.86 to J. I. Case Corporation on December 15, 1969, on an oral agreement.

In the fall of 1970 when Johnson received notices from CCEC that a payment was due October 1st, he went to see the dealer about why these notices were directed to him. The dealer said they owed money to CCEC but had no money to make the payment. At the request of the dealer, on October 12, 1970, Johnson signed and mailed to CCEC a letter stating he would be making a payment on his contract in two or three weeks, and about the same time the dealer by letter made a written commitment that they would make a payment of $3,335.63 to CCEC the first week of November. Johnson was of the impression he owed some money on one of the tractors under an oral contract.

At this point Johnson decided he ought to consult a lawyer who set up a meeting with CCEC, the dealer and Johnson. At this meeting CCEC accepted a check from the dealer for $1,000 and another postdated check for $2,335.63 which was unpaid as the dealer filed a petition in bankruptcy.

CCEC commenced this action in claim and delivery alleging it was entitled to the immediate possession of the "83" tractor substituted for Johnson's own "82" tractor described in the Purchase Agreement signed by defendant and assigned to CCEC. It appears the sheriff did not take possession of any tractor as defendant did not have possession of an "82" tractor, so CCEC attempted to "levy" on the "83" tractor. Johnson's counsel made a $10,000 deposit to secure delivery of either tractor. Near the end of the trial it appeared the whereabouts of the "82" was unknown and plaintiff admitted when it brought the action it was not to recover possession of the "82" tractor (No. 1), as it made no claim as to it and it does not appear that anyone knew what became of it. Likewise, it is not clear upon what bases plaintiff could assert a claim to the "83" tractor for it is not claimed Johnson ever signed a purchase agreement for it, though it does appear he signed a form stating the serial number on a Case 1031 tractor should have been listed as 8364023 instead of 8297925. During this period of some months Johnson received an advice of insurance and something referred to as confirmation of agreement.

Johnson was a large farm operator and cattle feeder, and over a period of years he had done about $50,000 worth of farm machinery business with the dealer. During part of the time involved he was absent on cattle buying trips and was also hospitalized for some time because of two heart attacks. There was evidence that the policy of having equipment out on approval for two or three months was customary between the dealer and Johnson and that some of Johnson's statements to CCEC were made at times when he had several different tractors out on approval.

The foregoing is but a bare outline of the evidence, and if from that version it appears inconsistent and confusing an examination of the evidence and exhibits only heightens those conclusions.

At the conclusion of evidence, plaintiff moved to amend the complaint to "seek relief for fraud and deceit" which the trial court granted and forthwith plaintiff moved for a directed verdict in the amount of "eighty-seven hundred and some dollars, whatever the balance due and owing on the contract". The court granted the motion, and by direction of the court a jury verdict for $8,708.75 was entered and judgment in that amount for plaintiff.

As noted plaintiff commenced the action as one in claim and delivery and whether it was in doubt if it could prevail or would be unsuccessful, during the trial it amended the complaint to add a second cause of action for money damages in an amount "due under the contract". It is not clear whether this referred to the Johnson contract to buy his own tractor or an amended contract. Defendant introduced evidence, and after both parties had rested plaintiff again moved to amend its complaint to seek "relief for fraud and deceit in the amount prayed for in the Complaint" as a "third count."* Defendant's objection to this was a motion to strike it "because of failure of proof for the allegations set forth in the Count 3." The court granted the amendment.

█ Fraud is never presumed or lightly inferred and the burden of establishing fraud rests on the party who is to rely on it for affirmative relief. Spitzer v. Spitzer, 84 S.D. 147, 168 N.W.2d 718. Fraud must be proved by a preponderance of the evidence, but that evidence must be clear, satisfactory and convincing. Kunkel v. United Security Ins. Co., 1969, 84 S.D. 116, 168 N.W.2d 723, and see cases cited in General Finance Corp. v. Fidelity and Casualty Co., 1970, D.C.S.D., 311 F.Supp. 353. Acc: 37 Am.Jur.2d, Fraud and Deceit, § 481.

█ Questions of fraud and deceit are generally questions of fact and as such are to be determined by the jury. Wolfgram v. Dill, 37 S.D. 282, 157 N.W. 1059; 37 C.J.S. Fraud § 123; 37 Am.Jur.2d, Fraud and Deceit, § 481. Likewise, whether a party relied on the claimed fraud to its detriment is a fact question for the jury. Coman v. Williams, N.D., 65 N.W.2d 377.

---

* Attention is called to RCP 9(b) which provides "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." See also Voeller v. Geisler, 77 S.D. 96, 86 N.W.2d 395.

■ In a case being tried by a jury the court should not undertake to pass on and decide questions of fact. 53 Am.Jur., Trial §§ 156, 362, et seq. From the extended colloquy in the record between the judge and counsel it appears the argument of plaintiff's attorney in support of the motion for the directed verdict and the trial judge's direction of verdict were based on the fraud and deceit theory, though mention was also made of a conspiracy of defendant in aiding and abetting the fraud of the dealer. Some of this discussion referred to acts of defendant nearly two years after plaintiff had bought and paid for the original contract which, instead of showing a sale of a new 1968 tractor to defendant, listed the tractor defendant owned.

■ Assuming there was sufficient evidence of fraud and deceit and that plaintiff relied on it to its detriment, of which we express no opinion, questions of fraud and deceit are for the jury, and the court erred in directing the verdict for plaintiff.

Reversed.

HANSON and WINANS and WOLLMAN, JJ., and MANSON, Circuit Judge, concur.

MANSON, Circuit Judge, sitting for DOYLE, J., absent.