RIST, Respondent v. KARLEN, Appellant

(241 N.W.2d 717)

(File No. 11646. Opinion filed May 13, 1976)

Rehearing denied June 8, 1976

Gale E. Fisher, May, Johnson & Burke, Sioux Falls, Robert J. Haar, Viborg, for plaintiff and respondent.

James F. Margadant, Andera, Margadant & Erickson, Chamberlain, for defendant and appellant.

WUEST, Circuit Judge.

The defendant, Merrill Karlen, operates a 30,000-acre ranch near Reliance, South Dakota. He owns 9,000 acres and leases the balance. Every year he sells some breeding stock, but some of his leases were terminating January 1, 1974, so he decided to sell more than usual. He had the cattle for sale sorted and made arrangements to rent the Walt Bones Sale Barn near Parker, South Dakota. Karlen paid $500 for the use of the barn, and Mr. Bones was to take care of the advertisement. Thereafter, Mr. Bones prepared a sale circular or advertisement which was mailed without Mr. Karlen's knowledge. This circular or advertisement listed "200 Commercial Hereford Cows, 3 yrs. to 8 yrs. old," among other cattle to be sold at the "Karlen Reduction Cow Sale." When Mr. Karlen discovered the cattle were being advertised as three years to eight years old, he contacted Mr. Bones. Bones agreed to purchase any cows over eight years of age.

Respondent, Lee Rist, a farmer living near Centerville, South Dakota, received one of these circulars in the mail and decided to purchase some of the cows to enlarge his herd. Prior to the sale he made an attempt to examine the cows but was unable to ascertain their ages. Before the sale Mr. Karlen sorted out the cattle he thought were over the age of eight years. Prior to the commencement of the sale he told respondent the cattle were not over eight years old, and he gave a short speech to the prospective bidders on the condition of the cows and told them the cows over the age of eight years had been sorted out and would be purchased by Mr. Bones. Respondent purchased thirty-six head at a total cost of $18,055. He trucked the cattle to his farm and placed them in a separate yard. A few days later he noticed one of the cows looked sick, so he called his veterinarian. The veterinarian treated the animal, but it died. The veterinarian and respondent then examined the dead animal's ear and found that she had a tat-

too indicating she was born in 1964.

According to the evidence, heifers kept for breeding pur-
poses are required to be vaccinated for brucellosis between the
ages of three and eight months. When the veterinarian performs
the vaccination he tattoos one of the ears of the animal showing
the year of vaccination. At the same time, an ear tag is placed on
the animal's ear which contains an identifying number.
Thereafter, the animal can be identified by the ear tag, and the
year of vaccination ascertained. A record of the vaccination, tat-
too marks and ear tag are forwarded to the State Livestock
Sanitary Board where they are maintained. These records are
then available to ascertain whether a particular cow has been
vaccinated for brucellosis. If she is vaccinated at the proper age,
her age can be ascertained from the tattoo marks. These tattoo
marks are placed inside the calf's ear, which ordinarily becomes
dirty and must be washed before the tattoo mark can be seen.
Thus, in the case of the cow which died first, the tattoo marks in-
dicated she was ten years old. Respondent was not particularly
concerned about the first cow until another lost her calf in March.
Then in April 1974, a cow died from calving complications. An ex-
amination of this cow's ear showed she had been vaccinated in
1964 and was also ten years old. Respondent cut the ear off this
cow and preserved it in vinegar. Later, two cows quit milking and
could not care for their calves. Respondent tried to bottle feed
the calves and had a veterinarian treat them, but the calves died
within a couple of days. About a week later the same thing hap-
pened and another calf died. As a result of these incidents, Rist
purchased special feed, which, along with other feed, maintained
the cows' health so they could raise their calves. Mr. Rist called
Mr. Karlen several times and told him about the difficulties and
inquired as to the age of the animals. Mr. Karlen responded by
saying he would contact him again. On a third occasion, Mr.
Karlen told respondent he would make an adjustment, but he
never did. So in June, Mr. Rist caught all of the cows, washed
their ears, and wrote down the tattoos and the numbers on the
ear tags. According to the examination of respondent, he had pur-
chased twenty-six cows that were over eight years of age. Later,
Mr. Karlen's veterinarian and foreman checked the cattle for tat-
too marks. According to their computation, eleven of the cattle

were over the age of eight years when sold.

Respondent introduced evidence that the cows over eight years of age would not be as valuable as those under the age of eight years. Also received as evidence of damages were the veterinarian's expense and the cost of the special feed.

The respondent brought his complaint on the tort theory of fraud and deceit and alleged actual damages of $7,162 and punitive damages of $5,000. The trial court instructed the jury as to fraud and deceit upon the respondent's request. The trial court also instructed the jury upon the theory of breach of warranty pursuant to SDCL 57-8-36 and 57-8-38, at the request of defendant. The jury returned a verdict of $2,700 actual damages and $5,000 punitive damages. Judgment was entered pursuant to the verdict.

The defendant does not appeal from the award of actual damages, apparently believing the actual damages are justified under the theory of breach of warranty; therefore, we shall not consider the question of actual damages any further. Defendant does, however, attack the award of punitive damages.

Thus, we will now examine whether the award of punitive damages can be sustained. To justify such an award under the facts of this case, it must first be shown that there was a fraud committed pursuant to SDCL 20-10-1 and 20-10-2, the tort action of deceit.* Next, it must be shown that the fraud is of the quality to justify the imposition of such punishment under the punitive damages statute, SDCL 21-3-2 (as will become apparent, however, it is unnecessary for us to consider this second question).

Did the respondent bring forth sufficient evidence of the action of deceit under SDCL 20-10-1 and 20-10-2?

---

\* The parties in their briefs have dwelt upon SDCL 53-4-5 to define the tort of "deceit." However, this section sets out the definition of actual fraud applicable to contract law. SDCL 20-10-1 and 20-10-2, on the other hand, define the elements of the tort of deceit, which is a species of fraud.

Neilson v. Edwards, 1914, 34 S.D. 399, 148 N.W. 844, pointed out that the contract-tort distinction of the sections is real although the definitions are admittedly "similar." Thus, one who brings an action in tort or in contract should be careful to distinguish between the two sections.

SDCL 20-10-1 states that:

"One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

SDCL 20-10-2 states:

"A deceit within the meaning of § 20-10-1 is either:

(1) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

(2) The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

(3) The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or

(4) A promise made without any intention of performing."

Our decision in Waggoner v. Midwestern Development, Inc., 83 S.D. 57, 154 N.W.2d 803, found that the provisions of the foregoing statutes are declaratory of the common law and comprehend an intention to mislead.

Was there, then, sufficient evidence of the intention to mislead so as to allow submission of the question to the jury? We find that the evidence was insufficient to justify such submission. First, the advertisement which incorrectly stated that the cows at the auction would be three to eight years old was sent out without the defendant's consent or knowledge. Furthermore, shortly thereafter the defendant contacted Mr. Bones who agreed to correct the problem by purchasing all of the cows over eight years old. The defendant thereafter went through his herd, and, referring to shoulder marks and brands, removed the cows

he thought were over the age of eight years and sold them to Bones. In addition, the defendant, prior to the sale, publicly told the potential bidders, including the respondent, that there had been cows over eight years of age in the herd, but that he had removed them.

This court has previously identified the burden of proof applicable to cases of fraud and deceit. In Commercial Credit Equipment Corp. v. Johnson, 1973, 87 S.D. 411, 209 N.W.2d 548, we said: "Fraud is never presumed or lightly inferred and the burden of establishing fraud rests on the party who is to rely on it for affirmative relief * * Fraud must be proved by a preponderance of the evidence, but that evidence must be clear, satisfactory and convincing."

We have noted, furthermore, that "[q]uestions of fraud and deceit are generally questions of fact and as such are to be determined by the jury." Commercial Credit Equipment Corp. v. Johnson, supra. However, when there is no evidence to support the submission of a question to the jury, it is improper to do so. Dwyer v. Christensen, 1958, 77 S.D. 381, 92 N.W.2d 199. We find that the evidence in this case does not allow the implication of an intention to mislead. We therefore reverse the judgment as to punitive damages because the issue of whether the tort of deceit, SDCL 20-10-1 and 20-10-2, had been committed should not have been submitted to the jury. It is thus unnecessary to take the next step and discuss whether this case would have been a proper one for the imposition of punitive damages under SDCL 21-3-2.

The portion of the judgment awarding actual damages, which was not attacked in this court, is affirmed; and the portion of the judgment awarding punitive damages is reversed and the cause remanded to the circuit court for proceedings not inconsistent with this opinion.

DUNN, C. J., and WOLLMAN and COLER, JJ., concur.

WUEST, Circuit Judge, sitting for WINANS, J., disqualified.