Albert LIMPERT, Plaintiff
and Appellee,

v.

Adolph R. BAIL, Jr., Defendant, Third
Party Plaintiff and Appellant,

v.

Dr. William ROTENBERGER, Third
Party Defendant and Appellee.

No. 16080.

Supreme Court of South Dakota.

Considered on Briefs Oct. 13, 1988.

Decided Oct. 4, 1989.

Hermon B. Walker and Daniel L. Pahlke of Rushmore Legal Center, Rapid City, for defendant/third party plaintiff/appellant Bail.

Richard Pluimer of Carl & Pluimer, P.C., Belle Fourche, for plaintiff and appellee Limpert.

Thomas H. Barnes and Gregory G. Strommen of Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, for third party defendant and appellee Rotenberger.

SABERS, Justice (on reassignment).

*Procedural history and issues.*

Albert Limpert (Limpert) filed a complaint alleging that Adolph R. Bail (Bail) breached the terms of an oral contract to purchase 130 head of cattle as specified by Bail, and wrongfully converted the cattle by failing to return the allegedly defective livestock and exercising sole control over them. Bail counterclaimed and filed a third party complaint in negligence against William A. Rotenberger, DVM (Rotenberger), seeking indemnity for any judgment obtained in favor of Limpert and against Bail, and damages for lost profits and injury to reputation. The trial court granted motions for summary judgment in favor of both Limpert and Rotenberger, specifically finding that Bail's wrongful conversion of Limpert's cattle barred his recovery against Rotenberger on the indemnity theory, and that the absence of duty owed by Rotenberger to Bail precluded Bail's claim of negligence. Bail appeals and argues that the trial court erred in the following regards:

1) Summary judgment is inappropriate where plaintiff's theory presents a number of factual questions.
2) Summary judgment is inappropriate where a negligence claim is asserted in a third party complaint.
3) Summary judgment is inappropriate where the factual question(s) of duty and/or misconduct arise(s) in an indemnity claim.

We reverse the summary judgment in favor of Limpert and against Bail. We also reverse the summary judgment in favor of Rotenberger and against Bail on the negligence claim. We vacate, without deciding, summary judgment on the claim of indemnity because it is rendered moot by our holding on issue two.

*Facts*

In February 1986, Limpert and Bail entered into an oral agreement whereby Bail was to purchase from Limpert 130 cows and another 30 head from Limpert's brother. The cows were to be pregnancy tested, determined to be with calf, bled for brucellosis, have solid mouths, and not be over six years of age. Bail gave Limpert the names of two area veterinarians who were to test the cattle prior to the purchase. Limpert was unsuccessful in arranging such testing, and Bail ultimately contacted Rotenberger to do the work. There is some dispute as to what the veterinarian was enlisted to do; Bail argues that he believed the veterinarian would mouth the livestock as well as test them for pregnancy and brucellosis. The notation on the check issued by Bail to Rotenberger for the work done simply provided, "testing cows."

On February 19, 1986, Rotenberger tested the cattle while Limpert mouthed them. Bail arrived at the Limpert ranch and observed Rotenberger and Limpert working. Bail then issued Limpert a check for $62,-870.00 and the livestock were loaded and delivered to Bail's purchaser, Lyle Williams, at Philip, South Dakota. Williams began selling the cows, and at some point discovered that some of them had bad mouths. He refused to pay Bail, and Bail then stopped payment on the check issued to Limpert. During subsequent negotiations between Limpert and Bail, Limpert apparently offered to take back the defective cows, but they had already been sold. Bail issued Limpert a new check which represented either payment for all but the seventeen allegedly defective cows or an accord and satisfaction. Limpert accepted this check.

Limpert then sued Bail for breach of contract and conversion. The trial court found that Limpert demanded return of the cattle or payment therefor and was entitled to the purchase price under the contract, as a matter of law. The trial court also found, as a matter of law, no duty owing Bail from Rotenberger, and thus no actionable negligence, and that Bail's wrongful breach and conversion barred recovery from Rotenberger on the indemnity theory.

1. *Summary judgment in favor of Limpert and against Bail on theories of breach of contract and conversion.*

Summary judgment is properly awarded only when the moving party clearly shows

that he is entitled to judgment as a matter of law because there is no genuine issue as to any material fact. SDCL 15–6–56(c); *Groseth Int'l, Inc. v. Tenneco, Inc.*, 410 N.W.2d 159 (S.D.1987); *Bego v. Gordon*, 407 N.W.2d 801 (S.D.1987); *Hamaker v. Kenwel–Jackson Machine, Inc.*, 387 N.W.2d 515 (S.D.1986). "The evidence must be viewed most favorably to the non-moving party and reasonable doubts should be resolved against the moving party." *Groseth, supra* at 164. *See also Wilson v. Great Northern Ry. Co.*, 83 S.D. 207, 157 N.W.2d 19 (1968). Summary judgment is an extreme remedy and is not intended as a substitute for trial. *Bego, supra; Wilson, supra.* A belief that the nonmoving party will not prevail at trial is an inappropriate basis for granting summary judgment on issues not shown to be sham, frivolous, or so unsubstantial as to obviate the futility of their litigation. *Laber v. Koch*, 383 N.W.2d 490 (S.D.1986); *American Indian Agricultural Credit Consortium, Inc. v. Fort Pierre Livestock, Inc.*, 379 N.W.2d 318 (S.D.1985); *Wilson, supra.* If reasonable persons, upon examining the evidence, might reach different conclusions, a motion for summary judgment should be denied and the case tried on the merits. *See Laber, supra.*

■ In support of our conclusion that the motion for summary judgment in favor of Limpert should have been denied, we examine Limpert's claim of conversion. Limpert asserts that because Bail resold the allegedly defective cattle, rather than returning them, he is guilty of conversion for failure to comply with SDCL 57A–2–603, which requires a buyer to follow seller's instructions with respect to the goods after rejection. There is a clear factual dispute as to whether Limpert's remarks regarding the allegedly defective cattle constituted "instructions" to Bail as to the disposition of the defective cattle.

The UCC also provides that on a rightful rejection, a buyer has a security interest in goods in his possession or control for any payments made on their price and any expenses reasonably incurred in their inspec-

tion, receipt, transportation, care and custody, and may hold such goods and resell them. SDCL 57A–2–711. Thus, factual questions exist whether Bail's revocation was justifiable and whether he exercised good faith in reselling the goods. SDCL 57A–1–203.

■ Limpert's complaint also alleges breach of contract. In light of the above-cited statute providing for buyer's remedy of rejection and resale, the question arises whether a breach did in fact occur by virtue of Bail's resale. If a breach has occurred, the issue of damages will also be in dispute. Further, the claim of breach based on nonpayment for the seventeen head raises the issue whether the issuance of the second check was intended to constitute an accord and satisfaction. Cases involving intent are not usually suited for summary disposition. *Ahl v. Arnio*, 388 N.W.2d 532 (S.D.1986).

■ Summary judgment is also improper where defendant's defenses involve questions of fact. *See Bahr v. Bahr*, 85 S.D. 240, 180 N.W.2d 465 (1970). Here, Bail's defenses of fraud and deceit are questions of fact. *See Commercial Credit Equipment Corp. v. Johnson*, 87 S.D. 411, 209 N.W.2d 548 (1973). Likewise, whether a party relied on the claimed fraud to its detriment is a question of fact for the jury. *Id.* Bail's assertion that Limpert misrepresented the condition of the cows and that he, Bail, relied to his detriment on that representation presents a genuine issue of material fact. Accordingly, we conclude that Bail has set forth specific facts showing there are genuine issues for trial as required by SDCL 15–6–56(e). We reverse and remand summary judgment in favor of Limpert and against Bail.

2. *Summary judgment in favor of Rotenberger and against Bail on negligence theory.*

■ Summary judgment was also improper on this issue because Rotenberger had a legal duty [*] to both Limpert and Bail

---

[*] The dissent incorrectly asserts that Rotenberger owed no duty to Bail because the harm Bail

to properly test the cattle. *Restatement (Second) of Torts* § 323 (1977) provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

Likewise, it is generally recognized that one who undertakes to provide professional services has a duty to the person for whom the services are performed to use such skill and care ordinarily exercised by others in the same profession. *City of Eveleth v. Ruble*, 302 Minn. 249, 253–54, 225 N.W.2d 521, 524 (1974). As a veterinarian, Rotenberger provided professional services which created a duty to Bail as a recipient of those services. Whether that duty was breached is a genuine issue of material fact.

A duty to use proper care may also arise from a contractual relationship and breach of the resulting duty may give rise to tort liability. *Friedhoff v. Engberg*, 82 S.D. 522, 527, 149 N.W.2d 759, 762 (1967); *accord Champion v. United States Fidelity and Guaranty Co.*, 399 N.W.2d 320, 322 (S.D.1987); *see also Lincoln Grain, Inc. v. Coopers & Lybrand*, 216 Neb. 433, 437, 345 N.W.2d 300, 305 (1984) ("accompanying every contract is a common-law duty to perform with care, skill, reasonable expediency, and faithfulness"). Liability in tort for breach of that duty may arise as the result of negligence during the performance of the contract, even if there has been no breach of contract. *Layman v. Braunschweigische Maschinenbauanstalt, Inc.*, 343 N.W.2d 334, 341 (N.D.1983).

Rotenberger was selected, obtained, and paid by Bail to do pregnancy, mouth, and brucellosis testing on Limpert's cattle to enable and complete the sale of the cattle to Bail. As a result of this relationship, Rotenberger owed Bail a duty to exercise skill and care in the testing of the cattle. If that duty was breached liability arises. Whether that duty has been breached is a genuine issue of material fact.

Even if the contractual relationship was between Rotenberger and Limpert, rather than Rotenberger and Bail, a breach by Rotenberger of the duty owed to Limpert could still render Rotenberger liable to Bail. As explained by the court in *Layman, supra:*

Where one undertakes by contract to perform a certain service and is chargeable with the duty of performing the work in a reasonably proper and efficient manner, and injury occurs to a blameless person, the injured person has a right of action directly against the offending contractor which is not based on any contractual obligation but rather on the failure of such contractor to exercise due care in the performance of his assumed obligation.

encountered was not foreseeable. The dissent is wrong for two reasons. One, harm *was* foreseeable, and two, the dissent confuses foreseeability of a *specific type* of harm with foreseeability of harm. Rotenberger's "liability [is] not contingent upon foreseeability of the 'extent of the harm or the manner in which it occurred.'" *Ward v. LaCreek Elec. Ass'n, Inc.*, 83 S.D. 584, 588, 163 N.W.2d 344, 346 (1968) (quoting, *Restatement of Torts* § 435); *accord Johnson v. Straight's, Inc.*, 288 N.W.2d 325, 328 (S.D.1980). As explained in *Restatement (Second) of Torts* § 435 comment a (1965):

The fact that the actor, at the time of his negligent conduct, neither realized nor should have realized that it might cause harm to another of the particular kind or in the partic-

ular manner in which the harm has in fact occurred, is not of itself sufficient to prevent him from being liable for the other's harm if his conduct was negligent toward the other and was a substantial factor in bringing about the harm.

In other words, for a duty to arise it is necessary only that a risk of harm be (generally) foreseeable. It would certainly be within Rotenberger's range of apprehension that Bail could be harmed if the cattle were not as represented (because improperly tested). Therefore, it is immaterial for the purpose of determining the existence of duty whether Rotenberger could have foreseen the specific nature of the harm.

*Id.* at 341 (*quoting* 57 Am.Jur.2d *Negligence* § 50). Such an imposition of liability is consistent with SDCL 20–9–1, which provides in part: "Every person is responsible for injury to the person, property, or rights of another caused by his ... want of ordinary care or skill[.]" Rotenberger had a duty to exercise due care in the testing of the cattle. If in turn, Rotenberger allowed Limpert to do some of the testing, it would not absolve him from his responsibility to Bail. Thus, a legal duty and genuine issues of material fact exist. SDCL 20–9–1; *Groseth, supra.* Accordingly, the trial court's grant of summary judgment was in error.

3. *Summary judgment in favor of Rotenberger and against Bail on indemnity theory.*

We vacate, without deciding, the summary judgment on the claim of indemnity because it is rendered moot by our holding on issue two, which permits a direct action by Bail against Rotenberger. *See O'Connor v. Plotkins, Inc.*, 32 Md.App. 329, 362 A.2d 95 (1976) (*overruled on other grounds* by *Yarema v. Exxon Corp.*, 305 Md. 219, 503 A.2d 239 (1986)).

We reverse and remand for proceedings consistent with this opinion.

WUEST, C.J., and MORGAN, J., concur.

MILLER, J., concurs in part and dissents in part.

ANDERSON, Circuit Judge, concurs in part and dissents in part without writing.

ANDERSON, Circuit Judge, sitting for HENDERSON, J., disqualified.

MILLER, Justice (concurring in part and dissenting in part).

I concur with respect to issues one and three but respectfully dissent on issue two. I opine that no duty arose to protect Bail from the unforeseeable harm which he encountered on his subsequent disposition of the cows.

Foreseeability is the touchstone of the determination of the existence of a duty. *Johnson v. Straight's Inc.*, 288 N.W.2d 325 (1980); *Nicholas v. Tri–State Fair & Sales Ass'n*, 82 S.D. 450, 148 N.W.2d 183 (1967). The liability of a defendant is not contingent upon the foreseeability of the extent of the harm or the manner in which it occurred. *Johnson, supra.* Foreseeability must be analyzed in light of all the circumstances and is dependent upon the facts of each individual case. *Small v. McKennan Hospital*, 437 N.W.2d 194 (S.D.1989); *Johnson, supra.* "The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is the risk to another or others within the range of apprehension." *Nicholas, supra* (quoting Judge Cardozo, *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928). Thus, I ask, was it within the range of defendant's apprehension that a risk of injury to plaintiff existed and could have been avoided by the exercise of reasonable care. *Nicholas, supra.* I submit that the damages claimed by Bail were not and therefore no duty flowed from Rotenberger to Bail.

Bail contends that damage to his reputation and a reduced price upon resale were foreseeable damages placing a duty on Rotenberger to make a reasonable inspection of the cattle. Under the "totality of the circumstances test," *McKennan, supra; Johnson, supra,* with respect to the issue of foreseeability, we are required to review what information was available or what information Rotenberger had knowledge of at the time of the cattle inspection in order to determine if Bail's claimed damages were foreseeable.

Without a doubt, Rotenberger knew that Limpert was selling cattle to Bail and that his job was to check the cattle in order to determine if they conformed to the oral contract between Limpert and Bail. Nothing in the record exists to suggest that Rotenberger had any knowledge of what Bail's intentions were after taking possession of the cattle, and to suggest that he did amounts to conjecture and speculation. In light of these facts, if Bail subsequently discovered the nonconformance of the

cows, it would be foreseeable that he would seek to obtain the benefit originally bargained for, not from Rotenberger but from Limpert. The likelihood of this result is also evidenced in Bail's deposition. The following colloquy took place between Limpert's attorney and Bail:

Q. Have you handled any transactions before, or you bought pregnant cows, and it turned out that you've got an open or a late?

A. Well, yeah. I mean, I have bought pregnant cows before, and if they are not pregnant, I mean, the owner that sold the cows as being pregnant is the one that's—

Q. How do you normally handle a situation like that?

A. They make up the difference in the losses. That's what we have always done.

By Bail's own words, he indicates the type of recourse which is normally taken in the event a dispute arises under this type of a factual scenario. For Bail to expect Rotenberger to foresee what would happen beyond the original sale of the cattle between the two parties is requiring too much and extends the issue of foreseeability too far. This would require Rotenberger to have knowledge of what Bail intended to do with the cattle after his purchase. For example, whether he intended to sell them to a private buyer, selling them at another sale, keeping them for the purpose of raising the calves and later breeding the cows, etc.

If Rotenberger owed a duty to anyone it was to Limpert to make a reasonable inspection of the cattle in order to avoid any recourse by Bail in the event the cattle did not conform to the oral agreement. Whether or not Rotenberger was negligent does not bar Bail from seeking a remedy under the UCC for the sale of nonconforming cattle by Limpert. *See* SDCL ch. 57A-2. The injury or damage to Bail was simply not a foreseeable consequence under the totality of the circumstances. Damages to Limpert were. Rotenberger was simply under no duty to protect Bail from any harm outside the scope of the sale between Limpert and Bail under these facts.