#27149-a-LSW

**2015 S.D. 63**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

ROGER JOHNSON and
DOROTHY JOHNSON,                                      Plaintiffs and Appellants,

v.

HAYMAN & ASSOCIATES, INC.,
HAYMAN RESIDENTIAL
ENGINEERING SERVICES, INC.
and HAYMAN RESIDENTIAL
ENGINEERING SERVICES, LLC,                  Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE ROBERT A. MANDEL
Judge

\* \* \* \*

KYLE L. WIESE of
Gunderson, Palmer, Nelson
 & Ashmore, LLP
Rapid City, South Dakota                           Attorneys for plaintiffs
                                                                       and appellants.


JESSICA L. LARSON
GARY D. JENSEN of
Beardsley, Jensen & Von Wald, Prof. LLC
Rapid City, South Dakota                           Attorneys for defendants
                                                                       and appellees.

\* \* \* \*

ARGUED FEBRUARY 18, 2015
OPINION FILED **07/15/15**

WILBUR, Justice

[¶1.]      Roger and Dorothy Johnson appeal the circuit court's grant of summary judgment in favor of Hayman Residential Engineering Services, Inc. (Hayman).  The Johnsons sued Hayman on a theory of professional negligence because Hayman made an allegedly substandard and inadequate structural engineering report on the Johnsons' home (the Home).  The report was prepared for Fannie Mae, and the Johnsons alleged the report ultimately impacted the value of the Home.  The circuit court, in granting Hayman's summary judgment motion, held that Hayman owed the Johnsons no duty and, therefore, a professional negligence claim could not be established.  We affirm.

*Facts and Procedural History*

[¶2.]      In 2008, Fannie Mae foreclosed upon and acquired the Home.  The Home is located in Rapid City, South Dakota.  Fannie Mae, through its agent/broker Cathy Brickey, hired Hayman to perform a visual inspection and prepare a report outlining any structural problems.  The Hayman Report noted cracks in the drywall (both walls and ceilings), visible cracks in the foundation wall, a low spot in the garage, and several other foundational problems.  The Report concluded that the "most likely cause of the uplifting is expansive soil under the foundation.  The expansion is driven by water expansion."  Hayman believed that "the key to minimizing further movement in the footing is to keep water from collecting" under the foundation.  To that end, Hayman made two recommendations: (1) ensuring downspouts and grading slope away from the foundation at least six feet and (2) installing a French drainage system along the

exterior foundation wall that would direct water into a sump pump to remove water from the collection area.

[¶3.]     Based on the Report, Fannie Mae made some, but not all, of the recommended repairs.  Repairs included fixing cracked sheetrock, painting, and installing the French drainage system.  Brickey testified she would not have sold the Home without a structural inspection report, and she placed a "hold-don't show" on the Home until the Hayman Report was delivered and the repairs completed.  Hayman did not have anything to do with the Home or its repairs after the Report was provided.  Hayman did not select the contractors or design the repair work.

[¶4.]     Once repairs were made, Fannie Mae, through Brickey, listed the Home for sale.  Ronald and Dawn Mason, through their agent Susan Raposa, expressed interest in purchasing the Home.  Brickey showed Raposa the Home and informed Raposa of the repairs recently made.  Brickey remembers representing to Raposa that repairs were made, based on the Hayman Report, to make the Home sellable.  However, as was made clear by Brickey, "Fannie Mae did not authorize the [Hayman R]eport for the purpose of providing [it] to prospective buyers."  The Masons decided to purchase the Home from Fannie Mae.  Fannie Mae sold the Home to the Masons "as-is, where-is" with no warranties, either express or implied, with respect to the physical condition of the Home "including the structural integrity[,] . . . stability of the soil[,] . . . sufficiency of drainage[,] . . . or any other matter affecting the stability, integrity, or condition of the property or improvements[.]"  The Masons moved into the Home in October 2009.

[¶5.] The Masons lived in the Home until they sold it to the Johnsons via warranty deed in May 2012. The Masons used a realtor other than Raposa to sell the Home. It is undisputed that the Johnsons did not see or even know of the Hayman Report prior to purchasing the Home. Prior to purchase on February 15, 2012, the Masons provided the Johnsons with a Seller's Property Condition Disclosure Statement. The Masons noted that there were cracks in the driveway, but did not disclose cracks in the Home, cracks in the drywall, previously repaired cracks, water leakage in the garage, or other structural problems. The Disclosure Statement did not make reference to the Hayman Report.

[¶6.] Prior to purchase but after the Masons gave the Johnsons the Disclosure Statement, the Johnsons submitted an offer to the Masons. The offer was contingent upon a physical inspection of the Home. The Masons and Johnsons entered into a purchase agreement. If the inspection revealed conditions unsatisfactory to the Johnsons, they had multiple options, including deeming the purchase agreement null and void in its entirety. The Johnsons performed their own visual inspection in which Mr. Johnson noticed the French drainage system and believed it was installed to alleviate a drainage issue. The Johnsons also hired Drew Inspection Services to perform an inspection. The inspection revealed significant settling and cracking in the driveway in front of the garage, a negative slope of the driveway causing pooling and run-off towards the Home, several major cracks in the garage ceiling, cracks in the garage's sheetrock, and cracks along the joints of the Home's interior wall and ceiling. In addition to Mr. Johnson's inspection and the inspection by Drew Inspection, the realtors for the Masons hired

American Technical Services, Inc., to perform an inspection of the Home. American Technical Services opined that by extending the drainage area on the west and with rerouting water away from the garage and driveway area, it would solve any further movement of the garage and driveway. The Johnsons were present when the opinion was given. Following the inspections, the Johnsons negotiated a lower price and decided to purchase the Home.

[¶7.]     In August 2012, the problems with the Home became more noticeable. The Johnsons hired Albertson Engineering to perform another inspection. Albertson opined that settling was the cause of the Home's movement and that the settling could create more problems in the future. As part of its review, Albertson looked at the Hayman Report from 2009. Albertson concluded the Hayman Report contained invalid assumptions regarding the cause of the Home's movement and a geotechnical investigation should have been done before suggesting repairs. Albertson further concluded the Hayman Report did not contain the level of due diligence that a professional engineer should use to reach the conclusions it did.

[¶8.]     Albertson Engineering recommended that Terracon Consultants, Inc., perform a residential distress evaluation. Terracon found the soils below the foundation of the Home were settling and additional settling remained a concern. Terracon recommended additional foundational support with the use of micro piles or helical piers. The estimated cost of making all necessary repairs to the Home exceeded its value.

[¶9.]     The Johnsons filed a professional negligence claim against Hayman. Hayman moved for summary judgment against the Johnsons, asserting it did not

#27149

owe them a duty. The circuit court held a hearing on February 20, 2014. The court issued a memorandum decision and an order granting Hayman's motion for summary judgment. The circuit court entered its judgment on June 11, 2014. The Johnsons appeal.

[¶10.]     The Johnsons raise two issues in this appeal:

> 1.     Whether the circuit court erred when it granted Hayman's motion for summary judgment and concluded that Hayman did not owe the Johnsons a duty.
>
> 2.     Whether reliance is a necessary element of a professional negligence claim.

*Standard of Review*

[¶11.]     The standard of review for an appeal from summary judgment is well established:

> We must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the [circuit] court, affirmance of a summary judgment is proper.

*Brandt v. Cnty. of Pennington*, 2013 S.D. 22, ¶ 7, 827 N.W.2d 871, 874 (quoting *Jacobson v. Leisinger*, 2008 S.D. 19, ¶ 24, 746 N.W.2d 739, 745). "The circuit court's conclusions of law are reviewed de novo." *Weitzel v. Sioux Valley Heart Partners*, 2006 S.D. 45, ¶ 16, 714 N.W.2d 884, 891.

*Decision*

[¶12.]    1.    *Whether the circuit court erred when it granted Hayman's motion for summary judgment and concluded that Hayman did not owe the Johnsons a duty.*

[¶13.]    The Johnsons argue Hayman was negligent when it failed to disclose certain structural defects and allegedly made incorrect assumptions and diagnoses concerning the cause of the Home's movement. "In order to prevail in a suit based on negligence, a plaintiff must prove duty, breach of that duty, proximate and factual causation, and actual injury." *Hendrix v. Schulte*, 2007 S.D. 73, ¶ 7, 736 N.W.2d 845, 847 (quoting *Fisher Sand & Gravel Co. v. S.D. Dep't of Transp.*, 1997 S.D. 8, ¶ 12, 558 N.W.2d 864, 867); *see also Lien v. McGladrey & Pullen*, 509 N.W.2d 421, 423 (S.D. 1993). Whether a duty exists depends on the relationship of the parties, *Braun v. New Hope Twp.*, 2002 S.D. 67, ¶ 9, 646 N.W.2d 737, 740, and public policy considerations, *Kirlin v. Halverson*, 2008 S.D. 107, ¶ 52, 758 N.W.2d 436, 453; *Fisher v. Kahler*, 2002 S.D. 30, ¶ 6, 641 N.W.2d 122, 125. However, the lack of a relationship between the parties is not necessarily fatal to the duty determination. *Mid-W. Elec., Inc. v. DeWild Grant Reckert & Assocs. Co.*, 500 N.W.2d 250, 254 (S.D. 1993) (abolishing the privity of contract requirement). This is because "[f]oreseeability may also create a duty." *Braun*, 2002 S.D. 67, ¶ 9, 646 N.W.2d at 740; *see also Thompson v. Summers*, 1997 S.D. 103, ¶ 13, 567 N.W.2d 387, 392. "Although foreseeability is a question of fact in some contexts, foreseeability in defining the boundaries of a duty is always a question of law." *Braun*, 2002 S.D. 67, ¶ 9, 646 N.W.2d at 740 (quoting *Smith v. Lagow Constr. & Developing Co.*, 2002 S.D. 37, ¶ 18, 642 N.W.2d 187, 192). "Foreseeability in the 'duty' sense is different from foreseeability in fact issues bearing on negligence

(breach of duty) and causation." *Id.* (quoting *Smith*, 2002 S.D. 37, ¶ 18, 642 N.W.2d at 192). We, therefore, review the foreseeability determination and, ultimately, the duty determination de novo. *Janis v. Nash Finch Co.*, 2010 S.D. 27, ¶ 17, 780 N.W.2d 497, 503 (citing *Small v. McKennan Hosp.*, 403 N.W.2d 410, 413 (S.D. 1987)).

[¶14.] The Johnsons argue they were foreseeable plaintiffs because they were subsequent purchasers and Hayman knew or should have known Fannie Mae would use the Hayman Report to make repairs and sell the Home to the public. Hayman counters it owed the Johnsons no duty when it performed a visual inspection solely for Fannie Mae's benefit. Additionally, it was not foreseeable that the Johnsons would rely on the Hayman Report and, in fact, the Johnsons did not rely on the Hayman Report.

[¶15.] "The risk reasonably to be perceived defines the duty to be obeyed." *Id.* ¶ 15, 780 N.W.2d at 502 (quoting *Peterson v. Spink Elec. Coop., Inc.*, 1998 S.D. 60, ¶ 14, 578 N.W.2d 589, 592). "No one is required to guard against or take measures to avert that which a reasonable person under the circumstances would not anticipate as likely to happen." *Peterson*, 1998 S.D. 60, ¶ 14, 578 N.W.2d at 592 (quoting *Wildeboer v. S.D. Junior Chamber of Commerce, Inc.*, 1997 S.D. 33, ¶ 18, 561 N.W.2d 666, 670). Here, based on the circumstances of the case, it was not foreseeable to a reasonable person that the Johnsons would be harmed when Hayman prepared its Report solely for the benefit of Fannie Mae. Hayman performed a visual inspection of the Home and concluded its movement was "most likely" caused by uplifting. Fannie Mae made some repairs to the Home, but

beyond preparing the Report, Hayman was not involved in those repairs. The Masons then purchased the Home "as-is, where-is" from Fannie Mae, disclaiming all express and implied warranties. Two and a half years later, the Masons put the Home on the market via a different real-estate agent. The Johnsons submitted an offer to the Masons to buy the Home and, as an explicit term of the purchase agreement, the Johnsons were free to void the agreement if the Home inspection was not satisfactory. Both Mr. Johnson and Drew Inspection performed an inspection of the Home for the Johnsons. The Johnsons were put on notice that the Home had structural problems because Drew Inspection noted cracks in the drywall and extra support beams in a subterranean crawlspace. It is undisputed the Johnsons did not see or know of the Hayman Report prior to purchasing the Home.[1] Instead of voiding the purchase agreement, the Johnsons used the Home's problems to negotiate a lower purchase price. Finally, the Masons sold the Home to the Johnsons via warranty deed.[2] Based on the facts of the case, it was not reasonably foreseeable that the Johnsons would be harmed by Hayman or the Hayman Report.

[¶16.]     The Johnsons point us to two cases supporting their position that Hayman owed them a duty, *Limpert v. Bail*, 447 N.W.2d 48 (S.D. 1989) and *Brown*

---

1.     The Johnsons argue that they "indirectly relied" on the Hayman Report because Mr. Johnson saw the French drainage system installed pursuant to the Hayman Report. If anything, the presence of the French drain further put the Johnsons on notice of potential structural problems. Mr. Johnson's observation of the French drainage system does not serve as reliance on the Hayman Report.

2.     We note the Johnsons did not bring suit against the Masons for breach of any of the six warranties traditionally associated with a warranty deed. The record discloses that the Johnsons considered filing suit against the Masons but have yet to do so.

*v. Fowler*, 279 N.W.2d 907 (S.D. 1979). In *Limpert*, we analyzed whether a duty was owed to a prospective purchaser when a veterinarian allegedly breached his duty to properly test cattle. 447 N.W.2d at 50-52. We explained:

> Where one undertakes by contract to perform a certain service and is chargeable with the duty of performing the work in a reasonably proper and efficient manner, and injury occurs to a blameless person, the injured person has a right of action directly against the offending contractor which is not based on any contractual obligation but rather on the failure of such contractor to exercise due care in the performance of his assumed obligation.

*Id.* at 51 (quoting *Layman v. Braunschweigische Maschinenbauanstalt, Inc.*, 343 N.W.2d 334, 341 (N.D. 1983)). The Johnsons argue, "Just as it was foreseeable to a veterinarian that a subsequent purchaser of cattle could be injured if the veterinarian failed to adequately discharge his duty, it was foreseeable to Hayman that [its] failure to discharge [its] duty to a seller of real property could injure a subsequent purchaser of property."

[¶17.] However, in *Limpert*, the parties knew that a veterinarian would perform work on the cows in anticipation of the sale because it was part of the oral agreement. *Id.* at 49. Here, it is undisputed the Johnsons did not know of or rely on the Hayman Report, and the Hayman Report was not performed pursuant to a contract between Fannie Mae, Hayman, and the Johnsons. In addition, the intended beneficiaries of the veterinarian's services were the original parties to the contract, i.e., Limpert and Bail. *Id.* In this case, Fannie Mae hired Hayman to perform a visual inspection for Fannie Mae's benefit only. While Hayman may have been able to anticipate that Fannie Mae requested the Report in anticipation of making repairs to the Home and, perhaps, eventually selling it to the general

public, the Masons—who themselves did not know of the Hayman Report—purchased the Home "as-is, where-is." Further, the rule and rationale in *Limpert* contemplates a "blameless" person harmed by the conduct of a contractor. *See id.* at 51. The Johnsons are not blameless within the meaning of *Limpert* for six reasons: (1) the Masons disclosed some (but not all) of the problems with the Home to the Johnsons; (2) the Johnsons did their own home inspection before purchasing the Home; (3) Drew Inspection also performed an inspection of the Home; (4) Drew's inspection indicated structural problems with the Home; (5) the Johnsons had the opportunity to void the purchase agreement pending Drew's inspection; and (6) the Johnsons, with knowledge of the aforementioned facts, still purchased the Home. Thus, *Limpert* is distinguishable from the Johnsons' case.

[¶18.]    In the *Brown* case, the Browns (the plaintiffs) brought suit against a home-construction company for negligent construction. 279 N.W.2d at 908. The Browns purchased their home from a previous owner, and the previous owner had purchased the newly constructed home from the construction company's agent. *Id.* After two months of living in their home, the Browns noticed structural problems and filed suit against the home-construction company. *Id.* The circuit court granted summary judgment for the construction company citing privity of contract, and on appeal, we reversed and remanded. *Id.* at 909. We concluded the construction company owed a duty to the Browns because the Browns were

> members of the class of purchasers for whom the house was
> constructed, even if they were not the first purchasers. It is
> certainly foreseeable that such a house will be sold to
> subsequent purchasers, and that any structural defects are as
> certain to harm the subsequent purchaser as the first.
> Foreseeability is enhanced by the fact that the defects came to

> light within three years after construction and within one year after defendants' unsuccessful attempt to stop the settling.

*Id.* The Johnsons claim the same rationale applies when an inspection company negligently performs a home inspection that impacts a subsequent purchaser. We disagree.

[¶19.] *Brown* is distinguishable from this case because the action was based on a builder-vendor's negligence, not an inspector's alleged negligence. Hayman performed an inspection for the sole benefit of Fannie Mae. Hayman was not involved with any of the repairs or the Home's construction. The policy issue in *Brown* was to prevent "future harm . . . by imposing liability on contractors who negligently construct houses." *Id.* The same policy rationale does not exist when a limited and qualified home inspection is done for the sole benefit of a previous owner, especially when the subsequent owner did not rely on the previous home inspection and knows or should know of structural defects through the subsequent owner's own inspection. Therefore, *Brown* is distinguishable.

[¶20.] It was not foreseeable that the Hayman Report would harm the Johnsons under the facts of this case. Both *Limpert* and *Brown* are distinguishable and do not aid the Johnsons in establishing a duty owed by Hayman. Consequently, the Johnsons are unable to show Hayman owed them a duty of care. Therefore, we hold the Johnsons were unable to make out a prima facie negligence claim, and we affirm.

[¶21.]    2.    *Whether reliance is a necessary element of a professional negligence claim.*

[¶22.] The Johnsons claim that the circuit court added the element of reliance to the Johnsons' professional negligence claim. The Johnsons argue that

-11-

reliance is not a necessary element of professional negligence and that the circuit court's alleged error is cause for reversal. Hayman counters that this Court has specifically included the need to establish reliance in a professional negligence case in order to extend liability beyond privity of contract. *See Muhlenkort v. Union Cnty. Land Trust*, 530 N.W.2d 658, 662-663 (S.D. 1995) (finding there must be some reliance on the part of the third party to find an abstractor liable in tort to the third party); *Fisher Sand & Gravel Co.*, 1997 S.D. 8, ¶ 12, 558 N.W.2d at 867 (noting the policy concern in third-party negligence cases is to protect those who rely on the actions of others). Additionally, Hayman argues reliance is pivotal to the Johnsons' negligence claim.

[¶23.] First, we note that the circuit court did not add "reliance" as an element to the Johnsons' professional negligence claim. The circuit court's analysis in its memorandum decision cites lack of reliance as an additional reason why Hayman did not owe a duty to the Johnsons, i.e., reliance was indicative of, but not necessary to, establishing a duty. Second, we discussed reliance in *Muhlenkort* when we analyzed whether an abstractor owed a third party a duty of professional care. 530 N.W.2d at 662-63. We said, "To establish a duty on the part of the defendant, it must be foreseeable that a party would be injured by the defendant's failure to discharge that duty." *Id.* at 662. In analyzing foreseeability, we looked at the extent of an abstractor's liability in relation to a third party's reasonable reliance on the part of the professional. *Id.* We held, "[T]o hold an abstractor liable in tort to a third party there must be some reliance on the part of the third party[.]" *Id.* at 663. We followed the Florida Supreme Court's rationale:

> When an abstract is prepared in the knowledge or under conditions in which an abstracter should reasonably expect that the employer is to provide it to third persons for purposes of inducing those persons to rely on the abstract as evidence of title, the abstracter's contractual duty to perform the service skillfully and diligently runs to the benefit of such known third parties.

*Id.* (quoting *1st Am. Title Ins. Co. v. 1st Title Serv. Co. of the Fla. Keys Inc.*, 457 So. 2d 467, 472 (Fla. 1984)). Thus, we extended an abstractor's duty of professional care to foreseeable third parties who rely on an abstractor's professional report. *Id.* However, we did not hold that reliance is an element of professional negligence. *See id.* Reliance is helpful in analyzing foreseeability and, thus, duty, but it is not an element of a professional negligence claim. *See id.*; *Fisher Sand & Gravel Co.*, 1997 S.D. 8, ¶ 12, 558 N.W.2d at 867. The circuit court analyzed reliance and foreseeability consistent with this approach.

[¶24.]    In this case, Hayman could not reasonably expect a subsequent purchaser of the Home to rely on its visual inspection when Fannie Mae hired Hayman strictly for its benefit. The Johnsons were not "known" to Hayman, and the Hayman Report did not induce the Johnsons to buy the Home. The Johnsons were not aware of the Hayman Report prior to purchase, they had their own inspection done before they bought the Home, they could have voided the purchase agreement pending the results of their own inspection, and they were aware of the Home's structural problems prior to purchase. Hayman could not reasonably expect the Report that it prepared solely for the benefit of Fannie Mae to be used (and which, in fact, was not used) by a subsequent purchaser.

[¶25.]     Lastly, we note reliance is an element of negligent misrepresentation, *see Kahler*, 2002 S.D. 30, ¶ 10, 641 N.W.2d at 126, which in some cases, may also be asserted in addition to a professional negligence claim.  However, negligent misrepresentation was not pleaded or argued in this case.[3]  The two causes of action are different and distinct from one another.

*Conclusion*

[¶26.]     Hayman did not owe a professional duty to the Johnsons because they did not suffer a foreseeable harm stemming from Hayman's alleged negligence. Consequently, the Johnsons' professional negligence claim fails for want of a duty. We affirm the circuit court's grant of summary judgment.

[¶27.]     GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, concur.

---

3.     In Hayman's reply brief, Hayman argues the Johnsons' professional negligence claim is actually a mislabeled negligent misrepresentation claim. However, as the Johnsons point out, they asserted a professional negligence claim, and Hayman cannot dictate the theory upon which the Johnsons make their case.