#28740, #28741, #28745, #28746, #28747, #28748, #28753-a-DG

**2020 S.D. 14**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

| | |
|---|---|
| ALYSSA BLACK BEAR and KELSEY WALKING EAGLE-ESPINOSA, | Plaintiffs and Appellants, |
| v. | |
| MID-CENTRAL EDUCATIONAL COOPERATIVE, A Cooperative Educational Service Unit; AMERICAN INDIAN INSTITUTE FOR INNOVATION, a Non-Profit Corporation; JOANNE FARKE; BRANDON YORK; PAMELA HAUKAAS; NICOLE BAMBERG; TIM NEUGEBAUER; DAVID SCHOEMAKER; TODD REINISH; BILL MATHIS; DAVE MERRILL; TESS STARR; LLOYD PERSSON; CARMEN WEBER; JAMES MUNSEN; RICHARD PETERSON; CHRIS VANDER WERFF; TAMMY OLSON; TONYA VANEYE; SHIRLEY PEDERSON; RYAN YOUNGSTROM; TANYA ALDRICH; CHRIS EYRE; STACY PHELPS; DANIEL GUERICKE, THE ESTATE OF SCOTT WESTERHUIS, by and through its Personal Representative, FIRST DAKOTA NATIONAL BANK; and THE ESTATE OF NICOLE WESTERHUIS, by and through its Personal Representatives GEORGE FISH and KAREN FISH, | Defendants and Appellees. |

---

| | |
|---|---|
| MID-CENTRAL EDUCATIONAL COOPERATIVE, A Cooperative Education Service Unit, | Third-Party Plaintiff and Appellee, |
| v. | |
| SCHOENFISH & CO., INC., | Third-Party Defendant. |

---

ARGUED OCTOBER 2, 2019
OPINION FILED **03/18/20**

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
CHARLES MIX COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE BRUCE V. ANDERSON
Judge

* * * *

JOHN R. HINRICHS
SCOTT N. HEIDEPRIEM
MATTHEW TYSDAL of
Heidepriem, Purtell
  & Siegel, LLP
Sioux Falls, South Dakota


    and

STEVEN C. EMERY
Rapid City, South Dakota            Attorneys for plaintiffs and
                                    appellants Alyssa Black Bear
                                    and Kelsey Walking Eagle-
                                    Espinosa.


RYLAND L. DEINERT
RENE CHARLES LAPIERRE of
Klass Law Firm, LLP
Sioux City, Iowa


    and

SCOTT SWIER of
Swier Law Firm, LLC
Sioux Falls, South Dakota          Attorneys for defendant and
                                    appellee Mid-Central
                                    Educational Cooperative.

SAMUEL D. KERR of
Lynn, Jackson, Shultz
   & Lebrun, P.C.
Rapid City, South Dakota


     and


MICHAEL L. LUCE of
Lynn, Jackson, Shultz
   & Lebrun, P.C.
Sioux Falls, South Dakota

Attorneys for Joanne Farke; Brandon York; Pamela Haukaas; Nicole Bamberg; Tim Neugebauer; David Schoemaker; Todd Reinish; Bill Mathis; Dave Merrill; Tess Starr; Lloyd Persson; Carmen Weber; James Munsen; Richard Peterson; Chris Vander Werff; Tammy Olson; Tonya Vaneye; Shirley Pederson; Ryan Youngstrom; and Tanya Aldrich.


QUENTIN L. RIGGINS
KATELYN A. COOK of
Gunderson, Palmer, Nelson
   & Ashmore, LLP
Rapid City, South Dakota

Attorneys for defendants and appellees American Indian Institute for Innovation and Chris Eyre.


TERRY PECHOTA of
Pechota Law Office
Rapid City, South Dakota

Attorneys for defendant and appellee Stacy Phelps.


ERIC J. STEINHOFF of
Lind, Jensen, Sullivan
   & Peterson, P.A.
Minneapolis, Minnesota

Attorneys for defendant and appellee Daniel Guericke.

TRUDY A. MORGAN
RICHARD J. RYLANCE, II of
Morgan Theeler, LLP
Mitchell, South Dakota

Attorneys for defendant and appellee The Estate of Scott Westerhuis, by and through its Personal Representative, First Dakota National Bank.


REBECCA L. WILSON of
Myers Billion, LLP
Sioux Falls, South Dakota

Attorneys for defendant and appellee The Estate of Nicole Westerhuis, by and through its Personal Representatives George Fish and Karen Fish.

#28740, #28741, #28745, #28746, #28747, #28748, #28753

GILBERTSON, Chief Justice

[¶1.]        Students sued various defendants to recover for lost funding for

services denied to them under the GEAR UP program due to mismanagement and

embezzlement.  The circuit court denied summary judgment on several motions by

defendants before finding the students' claims preempted by federal law and

dismissing the case.  The students appeal and the defendants raise multiple issues

by notice of review.  We affirm the circuit court's decision dismissing the students'

case, but do so because the students lack standing to bring their claims.

**Facts and Procedural History**

[¶2.]        The Gaining Early Awareness and Readiness for Undergraduate

Programs (GEAR UP) grant is designed to help underprivileged students

throughout the country graduate from high school, enter, and succeed in post-

secondary education.  The U.S. Department of Education, particularly the Secretary

of Education, supervises the program and oversees disbursement of GEAR UP

grants.

[¶3.]        The South Dakota Department of Education (SDDOE) received the

grant in 2011 to provide services to low-income Native American students in South

Dakota.  SDDOE contracted with Mid-Central Educational Cooperative (MCEC) to

administer the GEAR UP program in South Dakota.  MCEC then entered into a

service agreement with the American Indian Institute for Innovation (AIII) for

assistance implementing parts of the program.

[¶4.]        In September 2015, it was revealed that Scott Westerhuis, MCEC's

business manager and AIII's registered agent and chief financial officer, and his

-1-

wife Nicole had been mismanaging and embezzling funds from MCEC. At that point, Dr. Melody Schopp, Secretary of SDDOE, told Daniel Guericke, the executive director of MCEC, that the agreement between SDDOE and MCEC may be terminated. The next day, Scott Westerhuis took the lives of himself, his wife, and their four children.[1] A few days later, Schopp sent MCEC a letter verifying termination of the agreement, explaining that MCEC had failed to successfully implement GEAR UP, listing the areas where MCEC's administration was deficient, and requesting that MCEC and its contractors retain all documents and information regarding the program.

[¶5.] Alyssa Black Bear and Kelsey Walking Eagle-Espinosa attended schools that GEAR UP was meant to serve: Todd County High School and St. Francis Indian School, respectively. They claim to have been denied GEAR UP benefits in those schools due to the embezzlement from MCEC. Both students now attend college. In April 2016, the students' counsel sent a letter to MCEC notifying them about a potential class action against MCEC, and demanding $2,000,000 plus attorney fees and expenses to settle the claims. This action commenced in May 2016.

[¶6.] In January 2017, the students filed an amended complaint against MCEC, AIII, MCEC's Directors, AIII's Directors, Daniel Guericke, Stacy Phelps (MCEC's director of the GEAR UP program and AIII's chief executive officer), the

---

1. The State began a criminal investigation into the missing funds shortly thereafter.

Estate of Scott Westerhuis, and the Estate of Nicole Westerhuis.[2] The complaint brought claims of civil theft against both Westerhuis Estates; breach of contract against MCEC and AIII; negligent supervision against the MCEC Directors, the AIII Directors, Phelps, and Guericke; respondeat superior against MCEC and AIII; and duty to control against the MCEC Directors and AIII Directors. The students moved to have the case certified as a class action on behalf of similarly situated students GEAR UP was meant to serve. The students later voluntarily dismissed the claims against the AIII Directors.

[¶7.]        The defendants resisted the students' request for class action certification and moved for summary judgment on multiple theories: (1) the students are not intended third-party beneficiaries of the SDDOE-MCEC or the MCEC-AIII agreements and cannot enforce them; (2) the students did not comply with applicable notice requirements; (3) neither MCEC nor AIII can be held vicariously liable for the Westerhuis's torts; and (4) the students do not have standing. A hearing was held in June 2017.[3] The circuit court found for the students on each issue, certified the class, and denied each motion for summary judgment.

---

2.      The original complaint was brought by Black Bear only and named only MCEC as a defendant. In response to the original complaint, MCEC brought a third-party complaint for indemnification or contribution against Schoenfish & Co., Inc., which conducted annual audits of MCEC's books, including the GEAR UP program.

3.      Other topics not at issue in this appeal were resolved at the hearing as well.

[¶8.]     The defendants moved for summary judgment again, this time on three bases: (1) there is no evidence that any GEAR UP funds were among the funds misappropriated; (2) the students' claims are preempted by federal law; and (3) the students do not have standing.[4]  A hearing was held in March 2018 on the new motions.  The circuit court denied the motion on the status of the GEAR UP funds, finding there were genuine issues of material fact.  The circuit court granted the motion for summary judgment based on preemption, finding no private remedy available to litigants under GEAR UP.  All claims were dismissed based on the preemption finding.

[¶9.]     Black Bear and Walking Eagle-Espinosa appeal, raising one issue:

> 1.    Whether the circuit court erred in ruling that their claims are preempted by federal law.

By notice of review, the various defendants raise six issues:

> 2.    Whether the circuit court erred in concluding that the Appellants effectively complied with notice requirements.
>
> 3.    Whether the circuit court erred in ruling that the Appellants have standing to bring their claims.
>
> 4.    Whether the circuit court erred in finding that the Appellants were intended third-party beneficiaries of the SDDOE-MCEC and MCEC-AIII agreements.
>
> 5.    Whether the circuit court erred in finding a genuine issue of material fact regarding whether MCEC or its executive director can be held vicariously liable for the torts of Scott and Nicole Westerhuis.
>
> 6.    Whether the circuit court erred in finding a genuine issue of material fact regarding whether GEAR UP funds were missing or misappropriated.

---

4.    The court did not readdress the standing claim.

7. Whether the circuit court erred in certifying the lawsuit as a class action.

## Standard of Review

[¶10.] Reviewing a motion for summary judgment requires us to "determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law." *Johnson v. Hayman & Assoc., Inc.*, 2015 S.D. 63, ¶ 11, 867 N.W.2d 698, 701 (quoting *Brandt v. Cty. of Pennington*, 2013 S.D. 22, ¶ 7, 827 N.W.2d 871, 874).

> The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Id.*

## Analysis and Decision

[¶11.] For a court to have subject matter jurisdiction over a case, the plaintiff must establish standing as an aggrieved person. *Cable v. Union Cty. Bd. of Cty. Comm'rs*, 2009 S.D. 59, ¶ 21, 769 N.W.2d 817, 825. "Standing to sue is part of the common understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102, 118 S. Ct. 1003, 1016, 140 L. Ed. 2d 210 (1998). To establish standing:

> First, the plaintiff must establish that he suffered an injury in fact—"an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" Second, the plaintiff must show that there exists a causal connection between the plaintiff's injury and the conduct of which the plaintiff complains. The

-5-

> causal connection is satisfied when the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Finally, the plaintiff must show it is likely, and not merely speculative, that the injury will be redressed by a favorable decision.

*Cable*, 2009 S.D. 59, ¶ 21, 769 N.W.2d at 825-26 (internal citations omitted).

[¶12.]     "[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992).

> At the motion for summary judgment stage of litigation, a party resisting the motion based on a lack of standing has a greater burden than at the motion to dismiss stage of litigation. "General allegations" suffice at the pleading stage because it is "presumed that general allegations embrace those specific facts that are necessary to support the claim." When a motion for summary judgment is under consideration, however, "the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true."

*Cable*, 2009 S.D. 59, ¶ 23, 769 N.W.2d at 826 (internal citations omitted).

[¶13.]     The students have alleged claims as third-party beneficiaries of the contracts between MCEC and SDDOE, and MCEC and AIII. They have also alleged tort claims for theft and negligent supervision and control of various employees and officers of the various defendants. In resisting summary judgment, the students submitted affidavits claiming they did not receive all of the educational services that were part of the GEAR UP program. They also presented facts evidencing possible theft or mishandling of GEAR UP funds by certain defendants. However,

these facts are insufficient to show that the students are aggrieved parties who suffered an invasion of a legally-protected interest, as all of their claims are premised on their ability to enforce the contracts as third-party beneficiaries. Such a claim is foreclosed by *Sisney v. State*, 2008 S.D. 71, 754 N.W.2d 639.

[¶14.] In *Sisney*, a penitentiary inmate sued the State and a third-party vendor seeking damages for breach of contract alleging he was a third-party beneficiary of a contract between the State and the vendor for the provision of food services at the prison. The contract included language that the services were to be provided to the State "in a manner that would meet the needs and concerns of the facilities' residents, inmates and staff." *Id.* ¶ 3, 754 N.W.2d at 642. In affirming the trial court's order dismissing the complaint for lack of standing, the Court held that not every person who receives a benefit from a contract is entitled to enforce it. *Id.* ¶ 10, 754 N.W.2d at 643. The ability of a third-party to assert rights "requires that *at the time the contract was executed*, it was the contracting parties' intent to *expressly* benefit the third party." *Id.* However, "even then, not all beneficiaries qualify: incidental beneficiaries are not entitled to third-party beneficiary status." *Id.* Moreover, when dealing with public contracts, *Sisney* observed that:

> "Government contracts pose unique difficulties in the area of third-party beneficiary rights because, to some extent, every member of the public is directly or indirectly intended to benefit from such a contract." Therefore, as a general rule, a private party who contracts with the public government entity does not open itself to liability at the hands of the public. . . . The right of enforcement in public contracts can only arise from the plain and clear language of the contract. Consequently, when a public contract is involved, *private citizens are presumed not to be third-party beneficiaries.*

*Id.* ¶ 11, 754 N.W.2d at 644 (emphasis added) (internal citations omitted).[5]

[¶15.]     Further, the *Sisney* decision quoted from *Drummond v. Univ. of Pa.*, 651 A.2d 572, 579 (Pa. Commw. Ct. 1994), which stated that "[t]here must be language evincing an intent that the party contracting with the government will be held liable to third parties in the event of nonperformance." In *Drummond*, numerous plaintiffs, representing poor and working families in Philadelphia, sought to enforce an agreement between the City of Philadelphia and the University of Pennsylvania requiring the University to provide annual scholarships to low-income high school students in the city. *Drummond* concluded the plaintiffs were incidental beneficiaries of the agreement and lacked standing, as "there is nothing within the contract to reveal an intention by both the City and the University at the time the agreements were signed that the University would be liable to members of the public for nonperformance[.]" *Id.*

[¶16.]     In *Sisney*, "the contract was a public contract between the State of South Dakota and [vendor], and the contract did not expressly indicate that it was intended for [plaintiff's] direct benefit or enforcement. On the contrary, the contract reflects that it was made for the express benefit of the State, and the collective benefit that inmates may have received was only incidental to that of the State."

---

5.     Plaintiffs attempt to distinguish *Sisney* because the State contract in *Sisney* was with a private vendor, unlike the contract here, which is with an educational cooperative (MCEC) made up of numerous member schools. However, the same concern we identified in *Sisney* regarding potential expanded liability burdens applies here, in contracts between public entities. This concern is perhaps even greater in the context of exposing another taxpayer-funded public entity to liability to a third-party.

2008 S.D. 71, ¶ 13, 754 N.W.2d at 644. Therefore, we concluded that the inmate did not have standing to sue under the public contract. *Id.* ¶ 15, 754 N.W.2d at 644-45.

[¶17.] Here, a review of the agreements at issue shows that they were entered into for the express benefit of the SDDOE to enable the State to implement the GEAR UP program. The contract with MCEC was a partnership agreement between the SDDOE and MCEC in which MCEC agreed to provide consultant services to the SDDOE, the lead partner responsible for ensuring that the GEAR UP program would be carried out in accordance with the Higher Education Act and corresponding federal grant requirements. MCEC agreed to staff various positions and GEAR UP programs and provide matching funds through cost sharing. MCEC's subcontract with AIII was likewise an agreement for employment services.

[¶18.] Additionally, the students have failed to point to any language in the SDDOE agreement with MCEC, or in MCEC's agreement with AIII, showing an intention to allow the public, or the students (individually or as a class), to enforce the contracts or sue for damages resulting from nonperformance. Therefore, any benefit the students may have received from the GEAR UP contracts was incidental to the primary purpose of the contracts, much like the incidental benefits received by inmates from the state contract at issue in *Sisney*. Because the students are not third-party beneficiaries of either contract, as defined in *Sisney*, they lack standing to pursue their contractual claims.

[¶19.] The students' tort claims for theft or conversion of the GEAR UP funds likewise fail because the students have made no showing that they had any legal right or property interest in any of the GEAR UP funds purported to have been

misused or converted. The GEAR UP program did not provide a direct source of funding to the students or their families. Instead, the program identified the following goals and objectives: increasing academic performance; increasing high school graduation rates and participation in postsecondary education; and increasing student and family knowledge of postsecondary education options, preparation and financing. These program goals were aspirational and meant to supplement existing educational programming. Therefore, the students and families targeted to receive services under the program did not acquire a legally-protected interest in the funds designated to implement the program.

[¶20.] The students have also failed to show a causal connection between the alleged wrongdoing (mismanagement, theft, or conversion of GEAR UP funds) and their alleged injury (loss of educational services). Here, the circuit court appeared to accept the students' underlying premise that equated reduced benefits and services with "perceptible harm." However, the students have not produced evidence showing that they suffered a concrete or particularized injury as a result of not receiving all of the services and/or programs that were to be provided by the GEAR UP program.

[¶21.] In response to the defendants' summary judgment motion, the students submitted two affidavits relevant to the factual showing required to establish standing. The affidavit from Kelsey Walking Eagle-Espinosa relates that she used a software program to develop a personal learning plan, but only in middle school and in ninth grade, rather than through the twelfth grade. Nonetheless, Walking Eagle-Espinosa states that she "was able to attend the six-week residential

summer 'GEAR UP Honors Program' each of the four years that [she] was in school." In a similar vein, she alleges that while she was not aware of a financial aid workshop provided by the GEAR UP program, she nevertheless obtained information about applying for financial aid from college representatives visiting her school. And while she notes that she did not have any ACT or SAT preparatory courses, it is undisputed that both students attend college. Walking Eagle-Espinosa's affidavit does not allege any resulting harm, particularly as it relates to the identified goals and objectives of the GEAR UP program.

[¶22.] Alyssa Black Bear's affidavit similarly identifies some GEAR UP programs and services she did not receive. But Black Bear's affidavit suggests that she may not have, at all relevant times, attended schools served by the GEAR UP program. In particular, she alleges only that she was a student at schools served by the GEAR UP program for three years: Todd County Middle School in sixth and seventh grade and Todd County High School only "during her junior year." Her affidavit also indicates that while she applied to participate in a summer school program, her application may have been denied "based upon the income of [her] mother." Therefore, even if the lack of services in and of itself could be deemed as a concrete injury, Black Bear's affidavit does not support the necessary causal inference that must be established to connect the purported lack of services with the actions of Defendants, as opposed to the students' own circumstances.

[¶23.] On appeal, the students acknowledge in their brief that "the effect of the loss of GEAR UP funds due to Appellees' actions and omissions on the efficacy of the GEAR UP program cannot be known, but can be assumed." An assumption or

possibility of a causal connection between the alleged wrong and injury is insufficient to generate a question of fact. "[W]hen challenging a summary judgment, the nonmoving party must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Peters v. Great W. Bank, Inc.*, 2015 S.D. 4, ¶ 13, 859 N.W.2d 618, 624 (internal citation omitted).

[¶24.]     Finally, the students have failed to show that a favorable decision by the Court will redress their claims for loss of past educational services. The students claim they suffered actual injury because "as members of the cohort to be served by the GEAR UP grant, misappropriation of GEAR UP grant funds by any means harmed them." However, the students ignore the fact that educational success is driven by numerous factors. While educational programming is certainly an important factor, there are no guaranteed outcomes. The students have failed to show, legally or factually, how an award of monetary damages would redress the alleged past loss of supplemental educational services. "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into [court]; that is the very essence of the redressability requirement." *Steel Co.*, 523 U.S. at 107, 118 S. Ct. at 1019.

**Conclusion**

[¶25.]     The circuit court incorrectly held that the students had standing to bring their claims. However, because the students have failed to show standing, the claims were properly dismissed on summary judgment. Because the students do not have standing, there is no need to address the parties' remaining claims. The circuit court's grant of summary judgment is affirmed.

#28740, #28741, #28745, #28746, #28747, #28748, #28753

[¶26.]        KERN, JENSEN, SALTER, and DEVANEY, Justices, concur.